[No. S030158. Oct. 25, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
PASCUAL HERNANDEZ RUBACALBA, Defendant and Appellant.

**COUNSEL**

Geoffrey R. Pope for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert Carl Schneider, Marc E. Turchin and Frederick Grab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

ARABIAN, J.—In a prosecution for possession of cocaine, is testimony as to the concentration of cocaine within the sample relevant to the question whether the amount of the substance is sufficient to be "used as a controlled substance"?

## I. FACTS

Los Angeles Police Officer Patrick Ullum testified that on July 5, 1990, he observed defendant look in the officer's direction, then turn away. Defendant

raised his right hand towards his mouth, and dropped "an off-white object" that resembled rock cocaine. Defendant's actions were consistent with trying to discard the object. Officer Ullum seized the item that defendant dropped and arrested him. Based upon his training and experience, Officer Ullum was of the opinion that the object, about one-quarter the size of an "aspirin," was a "usable quantity." Specifically, it "could be placed in a pipe or similar smoking device and smoked."

On cross-examination, defendant attempted to ask about the amount of cocaine needed "to get one high" and the purity of the cocaine in the seized object. He argued the questions were relevant because "the crime requires that the quantity be usable to achieve an effect." The court sustained a relevance objection to the questions.

Criminalist Debbie Daniels testified that the substance Officer Ullum seized weighed one-tenth of a gram and contained cocaine. On cross-examination, she testified that the tests she performed were "qualitative rather than quantitative." Upon prosecution objection, the defense was not allowed to question the criminalist regarding the purity of the cocaine.

As relevant here, the court instructed the jury, in accordance with CALJIC No. 12.00, that defendant had to have knowledge of the presence of the controlled substance and its nature as a controlled substance, and that the substance possessed must be "in an amount sufficient to be used as a controlled substance." It also instructed, in accordance with CALJIC No. 12.33, that it is not necessary that "the amount possessed, if used, would have the effect it is ordinarily expected to produce, referred to as narcotic effect" or that "the narcotic ingredient in the particular substance possessed was capable of producing a narcotic effect."

Defendant was convicted of possession of cocaine. The Court of Appeal reversed. Relying primarily on *People* v. *Johnson* (1970) 5 Cal.App.3d 844 [85 Cal.Rptr. 238], the court found that the trial court improperly restricted defendant's right to cross-examine the prosecution witnesses. We granted review.

## II.  DISCUSSION

In *People* v. *Leal* (1966) 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665], the defendant possessed "a small spoon on which was encrusted one-half grain (approximately 32 milligrams) of crystallized substance later stipulated to contain heroin." (*Id.* at p. 505.) We found that "in penalizing a person who possesses a narcotic the Legislature proscribed possession of a substance that

has a narcotic potential; it condemned the commodity that could be used as such. It did not refer to *useless* traces or residue of such substance. Hence the possession of a minute crystalline residue of narcotic useless for either sale or consumption . . . does not constitute sufficient evidence in itself to sustain a conviction." (*Id.* at p. 512, italics in original.) We remanded the case, in which a jury had been waived, to the trial court to determine whether the "residue was usable for sale or consumption." (*Ibid.*; see also *People v. Fein* (1971) 4 Cal.3d 747, 754 [94 Cal.Rptr. 607, 484 P.2d 583] ["It is now well established that evidence of useless traces or residue of narcotic substances do[es] not constitute sufficient evidence to sustain a conviction for possession of narcotics"].)

█ With one possible exception, discussed below, the decisions construing *People v. Leal, supra,* 64 Cal.2d 504, limit its holding to substances useless in form or quantity. There is no requirement that any particular purity or potential narcotic effect be proven.

Typical is *People v. Karmelich* (1979) 92 Cal.App.3d 452, 456 [154 Cal.Rptr. 842], where the court held: "The decision in *Leal* must be limited to such cases, where only a residue unusable for any purpose, is found; it does not extend to a case such as this . . . where the presence of heroin itself, not a mere blackened residue on a spoon, was discovered." (See also *People v. Camp* (1980) 104 Cal.App.3d 244, 249 [163 Cal.Rptr. 510] [following *Karmelich*]; *People v. Mardian* (1975) 47 Cal.App.3d 16, 45 [121 Cal.Rptr. 269] ["the prosecution need not show that the quantity possessed is capable of producing a narcotic effect on the user"]; *People v. Schenk* (1972) 24 Cal.App.3d 233, 238-239 [101 Cal.Rptr. 75] ["We reject the contention that the crime of possession of a restricted dangerous drug requires that the quantity of the drug be sufficient to produce a drug effect."]; *People v. Pohle* (1971) 20 Cal.App.3d 78, 82 [97 Cal.Rptr. 364] ["there is no requirement that evidence be produced as to the quantity of a specific ingredient within the contraband"]; *People v. Piper* (1971) 19 Cal.App.3d 248, 250 [96 Cal.Rptr. 643] [rejecting defendant's claim that a "quantitative analysis of the marijuana [must be] made to establish the particular marijuana he possessed had a potential to produce a narcotic effect on one using it"].)

The chemical analysis of the material possessed need only establish the existence of a controlled substance. A quantitative analysis establishing the purity of the controlled substance is not required. (*People v. Karmelich, supra,* 92 Cal.App.3d at p. 455 [chemist testified he did not perform a quantitative analysis, and could not say whether the substance contained more than one-tenth of 1 percent heroin]; *People v. Harris* (1971) 15 Cal.App.3d 498, 501 [93 Cal.Rptr. 285] ["the expert did not test for, and did

not testify as to, the purity of the substance, although it admittedly was adulterated"]; *People* v. *Carmical* (1968) 258 Cal.App.2d 103, 108, 107 [65 Cal.Rptr. 504] [no "quantitative chemical analysis" needed even though the chemist "was unable to state the amount of pure heroin present in the powder" and "the possibility exists that only traces of heroin were present in the mixture"].)

These cases make clear, and we agree, that the *Leal* usable-quantity rule prohibits conviction only when the substance possessed simply cannot be used, such as when it is a blackened residue or a useless trace. It does not extend to a substance containing contraband, even if not pure, if the substance is in a form and quantity that can be used. No particular purity or narcotic effect need be proven.

The Court of Appeal relied on *People* v. *Johnson, supra,* 5 Cal.App.3d 844. "Certain language in *Johnson* is subject to inference that one necessary ingredient of the crime of possession is that the quantity in question must be 'usable' in the sense that it be capable of producing a drug effect on the user." (*People* v. *Schenk, supra,* 24 Cal.App.3d at p. 238.) However, as explained in *Schenk, supra,* 24 Cal.App.3d at page 238, subsequent cases, including *People* v. *Pohle, supra,* 20 Cal.App.3d 78, decided by the same court, are inconsistent with such an implication. In *Johnson,* unlike this case, the trial court did not instruct the jury that the substance must be " 'in an amount sufficient to be used as a narcotic.' " (*People* v. *Johnson, supra,* 5 Cal.App.3d at p. 848.) The *Johnson* court found this instructional gap to be error. (See also *People* v. *Harris, supra,* 15 Cal.App.3d at p. 502 [distinguishing *Johnson* on this basis].) In any event, we disapprove any implication in *People* v. *Johnson, supra,* 5 Cal.App.3d 844, that is inconsistent with this opinion or the later appellate court decisions cited herein.

The precise issue here is whether the trial court abused its discretion in sustaining relevance objections to questions regarding the purity of the cocaine, and the amount of cocaine needed to get "high." (*People* v. *Green* (1980) 27 Cal.3d 1, 19 [164 Cal.Rptr. 1, 609 P.2d 468].) Unlike the Court of Appeal, we conclude it did not. As discussed above, the amount of cocaine needed to produce a narcotic effect and the purity of the substance need not be proven in order to establish a usable quantity. To be sure, the concentration of the substance might in some situations be relevant to a different element of the crime of possession—knowledge. (See generally Annot., Minimum Quantity of Drug Required to Support Claim That Defendant Is Guilty of Criminal "Possession" of Drug Under State Law (1992) 4 A.L.R.5th 1, 22, 110-111.) As the trial court correctly instructed the jury, only knowing possession of controlled substances is proscribed. (*People* v.

*Leal, supra*, 64 Cal.2d at p. 506; *People* v. *Carmical, supra*, 258 Cal.App.2d at p. 107.)

"It is not scientific measurement and detection which is the ultimate test of the known possession of a narcotic, but rather the awareness of the defendant of the presence of the narcotic. Guilt or innocence on a charge of illegal possession may not be determined solely by the skill of the forensic chemist in isolating a trace of the prohibited narcotic in articles possessed by the defendant. As forensic science, measuring devices and techniques improve, smaller and smaller amounts of residue are required for the chemist to detect the presence of the narcotic. *The presence of the narcotic must be reflected in such form as reasonably imputes knowledge to the defendant.*" (*People* v. *Aguilar* (1963) 223 Cal.App.2d 119, 122-123 [35 Cal.Rptr. 516], italics added, quoted in *People* v. *Leal, supra*, 64 Cal.2d at p. 509.)

As the italicized language in the previous paragraph implies, the form, not the purity, of the substance, is most pertinent to the question of knowledge. But purity may in some cases also be relevant. If, for example, the substance was found in a package of talcum powder, testimony that it contained only a microscopic amount of cocaine might be relevant to defendant's knowledge of the presence of the contraband. Here, however, the form of the substance and the officer's testimony were sufficient to establish knowledge. Defendant sought to ask the questions only on the issue of usable quantity; he never argued they were relevant to the element of knowledge. The court acted within its discretion in finding the evidence irrelevant to the issue of usable quantity, the only one upon which it was offered.

### III. CONCLUSION

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Baxter, J., and George, J., concurred.