884 P.2d 419

STATE of Idaho, Plaintiff–Respondent,

v.

Donald TROUGHTON, Defendant–Appellant.

No. 20972.

Court of Appeals of Idaho.

Oct. 4, 1994.

Rehearing Denied Nov. 14, 1994.

Van G. Bishop, Canyon County Public Defender, Nampa, for appellant.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

Donald Troughton appeals from a district court's order denying his motion to suppress physical evidence on a controlled substance charge. He also raises issues regarding evidence of the quantity of the controlled substance and the court's refusal to give certain jury instructions. For the reasons explained below, we affirm.

## FACTUAL BACKGROUND

Troughton was found guilty by a jury of felony possession of methamphetamine. I.C. § 37–2732(c)(1). In separate, but joined, actions, he was also found guilty by the same jury of three misdemeanors: possession of drug paraphernalia, carrying a concealed weapon, and obstructing and delaying an offi-

cer. Prior to trial, Troughton moved to suppress all statements made by him to police officers as well as all items or substances alleged to be in his possession at the time of the search on the ground that no probable cause existed either to detain or to search him. He argued that the evidence was, therefore, illegally seized by the State. The suppression motion was denied by the district court, and the State introduced various items, including a syringe with its contents and a knife, in evidence at the trial.

After the jury found Troughton guilty on all four counts, the district court imposed a unified five-year sentence, with three years fixed, for possession of a controlled substance. The sentence was then suspended so Troughton could complete a drug treatment program. The court also imposed a fine of $500 and gave a jail sentence for each misdemeanor charge; all of which were to run concurrent with the sentence imposed for the felony possession of a controlled substance. Troughton then pursued this appeal.

Facts presented at the suppression hearing and the jury trial show the following. Officer Augsburger, a Nampa City police officer with over thirteen years of law enforcement experience, was on patrol in Nampa at 1:30 a.m. on May 8, 1993, when he observed a pickup truck parked on the side of the road facing the wrong direction in front of a motel some distance from any private residence. The truck was allegedly parked in violation of the Nampa City Code, a misdemeanor offense. Augsburger drove past the vehicle and saw two individuals in the truck, one behind the driver's wheel and the other on the passenger's side. At this point, he decided that further investigation was warranted "considering the hour and area." Officer Augsburger turned his patrol car around and parked about fifteen feet in front of the truck, leaving his headlights on. He did not activate his flashing lights at any time.

Augsburger approached the individual on the driver's side of the vehicle and asked for some identification. While the driver was complying with this request, Officer Augsburger noticed the passenger attempting to hide his face with his hand. Augsburger

asked the passenger his name and the passenger replied, "Don Summer." Augsburger testified that he knew this name was false because of prior contacts with the passenger, but he could not recall the individual's actual last name. About this time, Augsburger called for backup because he felt his safety may be in jeopardy.

During his conversation with the two occupants, Augsburger observed an open can of beer on the console of the truck. He asked the driver for the can and poured its contents onto the ground. Augsburger held onto the driver's license with the intent of issuing him a citation for having an open container of alcohol. Augsburger then walked over to the passenger side of the truck. When he looked inside, he saw a second open can of beer located next to the passenger's feet on the floor. He requested the passenger to hand over the can, and it too was emptied. At this time, two patrol units arrived in response to Augsburger's request for assistance.

One of the backup officers identified the passenger, "Don Summer," as Donald Troughton. Augsburger then conducted a radio check on Troughton and was informed of the existence of outstanding warrants for his arrest. Augsburger returned to the truck, informed Troughton he was under arrest, and ordered him out of the truck. Troughton, however, would not move. At this point, Augsburger saw Troughton's hand drop toward the floor of the vehicle. He became suspicious and assisted Troughton out of the truck. After Troughton was handcuffed, searched, and placed in the back of a patrol car, Augsburger was informed by another officer that a knife and also a syringe containing a substance had been found near the seat where Troughton had been sitting.

### ISSUES PRESENTED

Troughton raises three issues on appeal:

1. Whether the trial court erred by denying the Motion to Suppress.

2. Whether the trial court erred by denying Troughton the opportunity to present evidence regarding the quantity of methamphetamine seized.

3. Whether the trial court erred by refusing the defendant's requested jury instructions regarding the quantity of the controlled substance and his individual guilt.

### MOTION TO SUPPRESS

■ Our review of decisions regarding motions to suppress is bifurcated. We defer to the lower court's findings of fact unless they are clearly erroneous. *State v. Weber*, 116 Idaho 449, 776 P.2d 458 (1989); *State v. Carr*, 123 Idaho 127, 844 P.2d 1377 (Ct.App. 1992). However, we exercise free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of facts found. *Carr*, 123 Idaho at 127, 844 P.2d at 1377.

■ The first issue before us is whether Troughton, a nonowner passenger of a vehicle, had standing to challenge the seizure of the syringe and its contents as well as the knife found in the vehicle as the result of an investigatory stop. Suppression of evidence may be obtained only by those whose rights are infringed. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Cowen*, 104 Idaho 649, 662 P.2d 230 (1983); *State v. Bottelson*, 102 Idaho 90, 625 P.2d 1093 (1981). In *State v. Haworth*, 106 Idaho 405, 679 P.2d 1123 (1984), the Idaho Supreme Court held that both the driver of a vehicle and a passenger in the vehicle have standing to contest the reasonableness of an investigatory stop of the vehicle as well as its continued detention.

■ In order to justify an investigatory stop, the State must take into account the totality of the circumstances. *Haworth*, 106 Idaho at 406, 679 P.2d at 1124 (*citing United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Such an assessment must meet two elements. First, the assessment must be based upon all the circumstances including objective observations, information from police reports, and patterns of operation of certain kinds of lawbreakers. From this data, trained law officers draw inferences and make deductions that may elude untrained persons. The second element requires that this process must raise a suspicion that the particular individu-

al being stopped is engaged in wrongdoing. *Id.*

 If the stop was initially valid, the passenger has no standing to challenge the evidence based on the stop or any subsequent search. However, if the stop was not valid or if it later turns into an unlawfully continued detention, the passenger has standing to challenge the evidence taken during any subsequent search because of his standing to challenge the stop. *State v. Luna*, 126 Idaho 235, 880 P.2d 265 (Ct.App. 1994).

The facts of this case are distinguishable from the facts of the cases cited above. In those cases, police officers essentially stopped vehicles for alleged traffic violations. In this case, however, the vehicle was already stopped along the side of the street when the officer decided to investigate. Although the facts are distinguishable, we believe that the standard of review provided above applies.

The record shows that Officer Augsburger noticed the truck because it was parked in violation of the Nampa City Code. He testified that although he rarely wrote tickets for such violations, he decided to investigate in this case because the vehicle was parked in a "strange location at a strange hour." During his initial contact with the driver, Officer Augsburger asked for identification. Shortly afterward, he discovered open containers of alcohol and then decided to issue a citation to the driver for the violation. Thus, at this point, both the stop and detention were valid.

While talking with the driver, his suspicion grew with regard to the passenger. The record shows that Troughton first tried to hide his face, then provided a false last name. It was a natural reaction for the officer to call for assistance because he knew Troughton was lying and the officer believed that his own personal safety may be in jeopardy. Once Troughton was identified and the officers were informed of outstanding warrants for Troughton's arrest, the continued detention of Troughton remained valid. Therefore, given the totality of the circumstances, we conclude that Officer Augsburger's initial investigatory stop and the following detention of the vehicle and of Troughton were reasonable and thus valid. Consequently, Troughton had no standing to challenge the evidence taken during the subsequent search.

## QUANTITY OF CONTROLLED SUBSTANCE

After the substance found in the syringe was tested and determined to be methamphetamine, Troughton was charged with violating I.C. § 37–2732(c)(1). This section makes it unlawful for any person to possess a controlled substance classified in Schedule II of the Uniform Controlled Substances Act of the Idaho Code. I.C. § 37–2707 sets forth the controlled substances listed in Schedule II as follows:

> Unless specifically excepted or unless listed in another schedule, [drugs and other substances listed under Schedule II include] any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system: ... Methamphetamine, its salts, isomers, and salts of its isomers ...

I.C. § 37–2707(d)(2).

 Troughton contends that the trial court erred by refusing to allow Troughton to present evidence as to the quantity of methamphetamine found in the syringe, and by refusing to give to the jury instructions proposed by Troughton with respect to the quantity of the methamphetamine. He argues that I.C. § 37–2707(d)(2) requires the State to prove that the quantity of methamphetamine found in the syringe was sufficient to have a stimulant effect on the central nervous system. Troughton's argument also raises the issue of whether I.C. § 37–2707(d)(2) requires the State to prove that the defendant possessed a quantity of methamphetamine such that the amount had a "potential" to have a stimulant effect on the central nervous system. The State counters that Troughton's argument is premised upon the assumption that the phrase "having a stimulant effect on the central nervous system" modifies the word "quantity." The State contends this reading of the sentence structure is incorrect and argues that the phrase modifies the word "substances" not the word "quantity."

To answer these questions, we look to the grammatical construction of the statute as the legislature intended the statute to be construed according to generally accepted principles of English grammar. *See State v. Collinsworth*, 96 Idaho 910, 914, 539 P.2d 263, 267 (1975). The Nebraska Supreme Court has explained this concept well: "[I]t is the rule of interpretation that relative and qualifying words and phrases are to be applied to the words or phrases immediately preceding and as not extending to or including other words, phrases, or clauses more remote, unless the extension or inclusion is clearly required by the intent and meaning of the context, or disclosed by an examination of the entire." *State v. Jennings*, 195 Neb. 434, 238 N.W.2d 477, 481 (1976). Under this rule, known as the rule of the last antecedent clause, a referential or qualifying phrase refers solely to the last antecedent, absent a showing of contrary intent. *Id. See also Myer v. Ada County*, 50 Idaho 39, 41, 293 P. 322, 323 (1930).

The question presented for determination is whether the phrase "having a stimulant effect on the central nervous system" in I.C. § 37–2707 modifies the word "substances" or the word "quantity." The trial court ruled that the phrase modifies the word "substances," and we agree. It is clear that the words "having a stimulant effect on the central nervous system," immediately following the word "substances" modifies that noun, and not the word "quantity" used earlier in the sentence. Furthermore, had the Idaho Legislature intended that a quantitative analysis be required under I.C. § 37–2707(d), the legislature would have set forth required amounts as it did for certain substances. *See, e.g.,* I.C. §§ 37–2709(e), –2711(b), and –2713(c).

We have also examined the case law from other jurisdictions concerning the particular language in question, or analogous language contained in schedules of stimulants and depressants, and find that the overwhelming weight of authority supports our position. *People v. Busby*, 56 Mich.App. 389, 224 N.W.2d 322 (1974) (State did not need to prove defendant possessed a specific amount of amobarbital and secobarbital to create po-

tential for abuse associated with a depressant effect on central nervous system); *State v. Jennings, supra* (State did not need to prove defendant possessed amount of amphetamines necessary to create potential for abuse associated with stimulant effect on central nervous system); *State v. McElroy*, 189 Neb. 376, 202 N.W.2d 752 (1972) (a quantity for a potential for abuse is not an essential element of the offense of unlawful possession of a controlled substance); *Doyle v. State*, 511 P.2d 1133 (Okla.Crim.App.1973) (State.did not need to prove that defendant had amphetamines in sufficient quantity to have a stimulant effect on the central nervous system). We hold that the trial court did not err by refusing Troughton's proffered evidence regarding the quantity of methamphetamine. Consequently, Troughton's requested jury instruction requiring the jury to find that the substance was in an amount sufficient to be used as a controlled substance was properly refused by the court.

## JURY INSTRUCTIONS ON INDIVIDUAL GUILT

Finally, Troughton claims the trial court erred by refusing his requested jury instruction regarding his individual guilt. His requested instruction asked the court to inform the jury as follows:

There must be substantial evidence, either direct or circumstantial, that establishes the guilt of each defendant as an individual rather than the collective guilt of two or more persons.

The court refused this request, writing on the instruction that it was "covered."

When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law. *State v. Enno*, 119 Idaho 392, 405, 807 P.2d 610, 623 (1991). To be considered reversible error, an instruction must have misled the jury or prejudiced the complaining party. *Salinas v. Vierstra*, 107 Idaho 984, 991, 695 P.2d 369, 376 (1985).

As to the failure to give this proposed instruction, we find no error. Troughton claims this instruction was proposed specifi-

cally to provide that he should be judged as an individual and that the State had the duty to prove his guilt beyond a reasonable doubt. The record shows that the judge informed the jury, in instruction No. 6, of the elements necessary to find Troughton guilty of illegal possession of a controlled substance. These elements included knowledge of the presence and nature of the controlled substance, and physical control or the power and intention to control it. This instruction specifically stated that the State must prove each element beyond a reasonable doubt. Furthermore, instruction No. 3(a) adds that evidence in the trial indicates that a person other than Troughton was, or may have been, involved in the crime for which Troughton was being tried. The instructions given lead us to conclude that the court did not err in refusing to add the specific jury instruction requested by Troughton.

## CONCLUSION

The order denying Troughton's motion to suppress, the trial court's rulings to exclude evidence regarding the quantity of methamphetamine and disallowing jury instructions concerning the methamphetamine quantity, and the court's refusal to give the requested instruction on individual guilt are sustained. The judgment of conviction is affirmed.

LANSING and PERRY, JJ., concur.