983 P.2d 217

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Rick Allen GROCE, Defendant–Appellant.**

**No. 24251.**

Court of Appeals of Idaho.

June 8, 1999.

Petition for Review Denied
Aug. 26, 1999.

John M. Adams, Kootenai County Public Defender; J. Bradford Chapman, Deputy Public Defender, Coeur d'Alene, for appellant.

Hon. Alan G. Lance, Attorney General; Myrna A.I. Stahman, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Judge.

A jury found Rick Allen Groce guilty of three counts of possession of a controlled substance and one count of possession of drug paraphernalia. Groce appeals, arguing that the evidence presented at trial was insufficient to support the jury's verdicts. For the reasons stated below, we affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Kootenai County Sheriff's Deputy Edward Anderson initiated a traffic stop of the vehi-

cle driven by Groce because the vehicle had no front license plate and a nonfunctional taillight. Groce provided Deputy Anderson with false identification, and after forty-two minutes of attempting to identify him, Deputy Anderson arrested Groce for obstructing and delaying a peace officer and failing to display and fasten license plates.

Deputy Anderson then conducted a search of Groce's vehicle and found a zipper pouch containing syringes, a spoon with white powder residue, and a small plastic scale with white residue powder. Upon discovery of these items, Deputy Anderson called for backup from the Kootenai County Drug Task Force. Drug task force Detectives Stewart and Hildebrandt arrived, identified Groce and completed the search of Groce's vehicle. In addition to the items located by Deputy Anderson, Detective Hildebrandt found a plastic baggie containing a small chunk of powder substance and a small plastic bindle also containing a chunky powder substance.[1]

Groce was charged by criminal information with three counts of felony possession of a controlled substance, specifically for the methamphetamine and amphetamine found in the two plastic baggies and the cocaine located on the plastic scale. The information was subsequently amended to include one charge of possession of drug paraphernalia. A jury found Groce guilty of all four counts. Thereafter, Groce filed a number of post-trial motions, including one for judgment of acquittal. The court denied Groce's motion for acquittal and eventually sentenced him to serve concurrent three-year indeterminate terms of incarceration, with one year fixed, for the felony possession charges. Groce then filed a notice of appeal.

## II.

## ANALYSIS

**A. The State Presented A Sufficient Foundation For Admission Of The Controlled Substances And Drug Paraphernalia**

Groce asserts that the state presented an inadequate foundation for admission of the contraband evidence at his trial by failing to establish a proper chain of custody. Groce specifically claims that the trial court did not determine that the evidence seized was the same evidence which was tested and there is a reasonable probability it was not. He cites to the fact that the evidence receipt lists only a bindle with tan powder residue as the contents of the evidence envelope to be tested. Detective Stewart testified that the items listed on the evidence envelope included the two plastic baggies inside a Camel cigarette package. Groce asserts that there is no explanation as to why these items were not listed on the receipt. Moreover, he notes that the criminalist who tested the substances made no mention of the Camel pack or the bindle, and the plastic gram scale which was also tested was not included on the evidence receipt. Thus, Groce argues that his objection to the admission of evidence for lack of foundation should have been sustained and the state should have only been permitted to admit evidence listed on the receipt.

■■■■ We review a trial court's conclusion that evidence is supported by a proper foundation under an abuse of discretion standard. *State v. Nelson*, 131 Idaho 210, 217, 953 P.2d 650, 657 (Ct.App.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 596, 142 L.Ed.2d 538 (1998). In criminal proceedings, exhibits must generally "be shown to be in substantially the same condition when offered into evidence as it was when the crime was committed." *Id.* The party offering the exhibit presents evidence of its chain of custody to demonstrate that the exhibit has not been materially altered. *Id.; State v. Kodesh*, 122 Idaho 756, 757, 838 P.2d 885, 886 (Ct.App.1992). The defendant then has the burden of making "some showing that the evidence was tampered or meddled with, to overcome the presumption that the integrity of the evidence routinely handled by governmental officials was suitably preserved." *Kodesh*, 122 Idaho at 757, 838 P.2d at 886, *citing State v. Ruybal*, 102 Idaho 885, 889, 643 P.2d 835, 839

---

1. These two baggies are referred to by the parties as a plastic bindle and a plastic baggie. For the

sake of clarity, these items will simply be referred to as two plastic baggies.

(Ct.App.1982). The standard for admissibility, then, is whether "the trial court can determine, in all reasonable probability, the proffered exhibit has not been changed in any material respect." *Id., citing State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct. App.1983).

■ After reviewing the evidence presented regarding the chain of custody of the exhibits at issue, we conclude that the district court properly admitted these exhibits. Although Groce correctly notes that the evidence receipt describes the contents of the evidence envelope only as "tan powder & bindle w/tan powder residue," the detective who sealed the evidence in the envelope and the criminalist who tested the evidence each testified that the envelope contained two plastic baggies and a scale. Detective Stewart testified that the only items he sealed in the evidence envelope, and then placed in the evidence locker, were two plastic baggies, one containing the tan powder and the other containing residue, and a black plastic scale. The property officer explained how the evidence envelope was removed from the evidence locker, and the criminalist identified the scale and two plastic baggies containing a tan powder as the evidence he tested.

The property officer explained that the only difference between the evidence envelope before it was taken to the lab for testing and after, was the lab technicians' seal across the bottom of the envelope where it had been opened and resealed. In addition, Deputy Anderson and Detectives Hildebrandt and Stewart each testified at trial that the syringes and metal spoon were in substantially the same condition as when they had first discovered them. Groce has identified nothing in the record to suggest that the evidence was altered or tampered with in any way. In light of the testimony, the district court properly concluded as a matter of reasonable probability that the evidence had not been materially altered. Accordingly, the district court did not abuse its discretion in admitting the challenged exhibits.

**B. Possession Of A "Usable Quantity" Of Cocaine Is Not Necessary To Sustain A Conviction For The Possession Of A Controlled Substance**

Groce asserts that because the state failed to demonstrate that he possessed a usable quantity of cocaine, there was insufficient evidence to sustain his conviction for *possession* of cocaine.[2] Groce's argument is premised on the assertion that knowledge is essential to forming the requisite intent to possess cocaine and that such knowledge is only demonstrated through a defendant's possession of a usable quantity of cocaine; that is, an amount sufficiently large to demonstrate knowledge of possession.[3]

During the search of Groce's vehicle, Deputy Anderson discovered *inter alia* a small plastic gram scale with white residue powder visible on the bowl portion of the scale. The scale was discovered in a box of clothing in the cab of the vehicle. Other items discovered in the vehicle included syringes, a spoon with white powder residue, and two plastic baggies containing powder substances later identified as amphetamine and methamphetamine. Subsequent testing of the substance on the scale revealed that the white residue was cocaine.

Groce was convicted of possession of cocaine in violation of Idaho Code § 37–2732(c), which provides:

> It is unlawful for any person to possess *a controlled substance* unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this chapter.
>
> (1) Any person who violates this subsection and has in his possession a controlled substance classified in Schedule I which is a narcotic drug or *a controlled substance* classified in schedule II, is guilty of a felony and upon conviction may be imprisoned for not more than seven (7) years, or fined not more than

---

**2.** Groce does not raise this issue with respect to his convictions for possession of methamphetamine and amphetamine.

**3.** This issue of "knowledge" will be further addressed in Section C, *infra.*

fifteen thousand dollars ($15,000), or both.

(Emphasis added.). Section 37–2707 of Idaho Code defines cocaine as a Schedule II substance:

(a) Schedule II shall consist of the drugs and other substances, by whatever official name, common or usual name, chemical name, or brand name designated, listed in this section.

(b) Substances, vegetable origin or chemical synthesis. Unless specifically excepted or unless listed in another schedule, *any* of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

. . . .

(5) Methylbenzoylecgonine (Cocaine—its salts, optical isomers, and salts of optical isomers).

(Emphasis added.).

Essentially, Groce argues that the legislature did not intend for the possession of minute quantities of cocaine to constitute a violation of I.C. § 37–2732(c) because the Idaho Uniform Controlled Substances Act (Idaho Act) does not criminalize the possession of "any quantity" of cocaine, while it does criminalize the possession of "any quantity" of other substances. *See, e.g.*, I.C. § 37–2705(d) (defining Schedule I hallucinogenic substances, in relevant part, as "[a]ny material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances. . . ."); I.C. § 37–2705(e) (including in Schedule I substances "[a]ny material, compound, mixture or preparation which contains any quantity of the following substances having a depressant effect on the central nervous system. . . ."); I.C. § 37–2705(f) (defining Schedule I stimulants to include "any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system. . . ."); I.C. § 37–2707(d) (defining Schedule II stimulants to include "any material, compound, mixture, or preparation which contains any quantity of the following

substances having a stimulant effect on the central nervous system: . . . Methamphetamine . . . ."); and I.C. § 37–2707(e) (defining Schedule II depressants to include "any material, compound, mixture, or preparation which contains any quantity of the following substances having a depressant effect on the central nervous system. . . .").

Idaho appellate courts have not directly addressed the usable quantity doctrine in this precise context. *See State v. Segovia*, 93 Idaho 594, 598, 468 P.2d 660, 664 (1970) (declining to resolve issue of whether a conviction for possession of marijuana may be sustained where quantity possessed is unusable because the defendant had substantial amounts of marijuana in his possession and jury instruction provided that possession of marijuana "in amounts sufficient to be used as a narcotic" is a crime). However, the Idaho Supreme Court has previously held that the state need not prove that a defendant possessed phencyclidine hydrochloride (PCP) in an amount sufficient to have a depressant effect on the central nervous system. *State v. Collinsworth*, 96 Idaho 910, 914, 539 P.2d 263, 267 (1975) (where statute provides that a Schedule III controlled substance is one which "contains any quantity of the following substances having a potential for abuse associated with a depressant effect on the central nervous system: . . . Phencyclidine . . .", the state is not required to demonstrate defendant possessed a "usable quantity"). Similarly, this Court has previously concluded that the state need not demonstrate that a defendant possessed a quantity of methamphetamine sufficient to have a stimulant effect on the central nervous system. *State v. Troughton*, 126 Idaho 406, 411, 884 P.2d 419, 424 (Ct.App.1994).

Both *Collinsworth* and *Troughton*, however, involved the application of generally accepted principles of grammar to determine whether statutory language containing the phrase "having a stimulant effect on the central nervous system" and "having a potential for abuse associated with a depressant effect on the central nervous system" modified the word "substances" or "quantity." Nevertheless, in *Troughton*, 126 Idaho at 411, 884 P.2d at 424, this Court noted that if the Idaho

Legislature had intended for a quantitative analysis to attach to the definition of possession of methamphetamine, it would have set forth requisite quantitative amounts as it did for other substances. *See* I.C. § 37–2709(e) (defining schedule III narcotic drugs in quantitative terms); I.C. § 37–2711(b) (defining schedule IV narcotic drugs in quantitative terms); I.C. § 37–2713(c) (defining schedule V narcotic drugs in quantitative terms).

▊ In addressing Groce's claim, then, we must determine what the legislature meant by the language "a controlled substance" as set forth in I.C. § 37–2732(c) and "any of the following substances . . .: Methylbenzoylecgonine (Cocaine—its salts, optical isomers, and salts of optical isomers)" as set forth in I.C. § 37–2707(b)(5). This Court exercises free review over the application and construction of statutes. *State v. Browning*, 123 Idaho 748, 749, 852 P.2d 500, 501 (Ct.App.1993); *Hanks v. State*, 121 Idaho 153, 154, 823 P.2d 187, 188 (Ct.App.1992). In construing a statute, we attempt to give effect to the legislative intent. *State v. Martinez*, 126 Idaho 801, 803, 891 P.2d 1061, 1063 (Ct.App.1995). When possible, we glean legislative intent from the plain language of the statute. *State v. Nunes*, 131 Idaho 408, 409, 958 P.2d 34, 35 (Ct.App.1998).

In 1970, Congress enacted the Comprehensive Drug Abuse Prevention and Control Act. Shortly thereafter, the National Conference of Commissioners on Uniform State Laws drafted the Uniform Controlled Substances Act (Uniform Act). The Uniform Act is a model act and was promulgated as a replacement for the Uniform Narcotic Drug Act and the Model State Drug Abuse Control Act.

> Th[e] Uniform Act was drafted to achieve uniformity between the laws of the several States and those of the Federal government. It has been designed to complement the new Federal narcotic and dangerous drug legislation and provide an interlocking trellis of Federal and State law to enable government at all levels to control more effectively the drug abuse problem.

Commissioner's Prefatory Note, UNIF. CONTROLLED SUBSTANCES ACT *in* HANDBOOK OF THE NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS AND PROCEEDINGS OF THE ANNUAL CONFERENCE MEETING IN ITS SEVENTY-NINTH YEAR, p. 223 (1970). As of November 13, 1998, fifty-one jurisdictions, including the District of Columbia, the United States Virgin Islands and Puerto Rico, had enacted the Uniform Act or a substantially similar act. 21 U.S.C.A. ch. 13, Refs. & Annots. (Table listing jurisdictions wherein the 1970, 1990, or 1994 versions of the Uniform Act or a combination thereof have been adopted.).

In 1971, Idaho adopted the Uniform Act. *See* 1971 Idaho Session Laws, ch. 215, pp. 939–69. When Idaho adopted the Uniform Act, the legislature included a "uniformity of interpretation" provision which provides that the Idaho Act "be so applied and construed as to effectuate its general purpose to make uniform the law with respect to the subject of this act among those states which enact it." I.C. § 37–2750. Thus, the legislature's explicit expression that the Idaho Act be construed in harmony with interpretations by other Uniform Act jurisdictions is instructive.[4]

▊ Here, the statute proscribing the possession of a controlled substance simply provides that "[i]t is unlawful for any person to possess *a controlled substance . . . .*" I.C. § 37–2732(c) (emphasis added). Included in the definition of a Schedule II controlled substance is "any of the following substances: Methylbenzoylecgonine (Cocaine—its salts, optical isomers, and salts of optical isomers)."

---

4. We note that in the compiler's notes to I.C. § 37–2701, the definitional section of the Idaho Act, reference is made to the following comparative legislation: CAL HEALTH & SAFETY CODE §§ 11000 to 11651 (Deering); MONT.CODE ANN. §§ 50–32–101 to 50–32–405; NEV.REV.STAT. ANN. §§ 453.011 to 453.348 (Michie); OR. REV. STAT. §§ 475.005 to 475.285, 475.940 to 475.965, 475.992 to 475.999; UTAH CODE ANN. §§ 58–37–1 to 58–37–20; WASH REV.CODE ANN. §§ 69.50.101 to 69.50.608; and WYO. STAT. ANN. §§ 35–7–1001 to 35–7–1057.

Nevada has adopted a statutory provision criminalizing the possession of a controlled substance only in an "amount necessary for identification as a controlled substance by a witness qualified to make such identification." NEV.REV. STAT. § 453.570 (1991).

I.C. § 37–2707(b)(5). A majority of Uniform Act jurisdictions similarly proscribe the possession of "a controlled substance" or controlled substances. *See* Note, *Criminal Liability for Possession of Nonusable Amounts of Controlled Substances,* 77 COLUM. L.REV. 596, 598–99 (May 1977) (Note). Most of the remaining jurisdictions proscribe the possession of "any controlled substance." *Id.* at 599.

In addressing usable quantity arguments under the Uniform Act, irrespective of whether the jurisdiction employs "a controlled substance," "controlled substances" or "any controlled substance" language, *most* jurisdictions have concluded that an individual need not possess a usable quantity to be found guilty of possession of a controlled substance. *See id.* at 605; *see also* Danny R. Veilleux, Annotation, *Minimum Quantity of Drug Required to Support Claim that Defendant is Guilty of Criminal "Possession" of Drug Under State Law,* 4 A.L.R. 5th 1, 24–28 (1992 & Supp.1998). In fact, it appears that only three Uniform Act jurisdictions have adopted a usable quantity requirement with respect to controlled substances, excluding marijuana: Arizona, Arkansas, and California. *State v. Donovan,* 116 Ariz. 209, 568 P.2d 1107 (Ct.App.1977) (recognizing prior case law requiring the state to prove that a defendant possessed a controlled substance in a usable quantity and defining usable quantity as that which is usable according to known practices of narcotics users); *Harbison v. State,* 302 Ark. 315, 790 S.W.2d 146 (1990) (concluding that possession of less than a usable amount of a controlled substance does not contribute to the use of or trafficking in drugs and is therefore not a crime); *People v. Rubacalba,* 6 Cal.4th 62, 23 Cal.Rptr.2d 628, 859 P.2d 708 (1993) (explaining that the usable quantity rule precludes conviction when the substance possessed cannot be used, such as when it is a blackened residue or a useless trace, but does not apply

when the substance is in a form and quantity that can be used). However, several Uniform Act jurisdictions do require possession of more than an identifiable trace of controlled substances, i.e., a measurable or visible quantity, before a conviction for possession will be sustained. *See* Note, *supra,* at pp. 605–12. *See also Thomas v. United States,* 650 A.2d 183, 191 n. 27, 195 n. 41 (D.C.1994) (noting that in controlled substance prosecutions, the government must prove that a defendant possessed a "measurable amount" of controlled substances).

The plain language of I.C. § 37–2732(c) does not merely proscribe the possession of an enumerated quantity of cocaine, but specifically proscribes the possession of *a* substance which the legislature has classified as *a* controlled substance, irrespective of quantity. The question before us is whether, by this language, the Idaho legislature intended to proscribe the possession of any quantity of cocaine or whether the legislature intended to proscribe only the possession of usable quantities of cocaine.

The Idaho legislature has classified substances according to six different schedules on what is essentially a "sliding scale" approach, with the more dangerous and addictive substances classified in Schedule I and the substances with the least potential for abuse and addiction contained in Schedules V and VI.[5] The classification of a substance depends on its potential for abuse, its potential for psychological or physical dependence, and the degree of accepted medical use in treatment in the United States. *See* I.C. §§ 37–2704, –2706, –2708, –2710, –2712, –2713A. Cocaine is a Schedule II substance. I.C. § 37–2707(b)(5). In order for a substance to be placed in Schedule II, the substance must have a "high potential for abuse," it must have a "currently accepted medical use in treatment in the United States, or currently accepted medical use

---

**5.** Notably, the drafters of the Model Uniform Act set forth criteria for determining how substances would be classified in schedules based on the following criteria: a substance's potential for abuse, a substance's known effects, the harmfulness of a substance and the level of accepted medical use. UNIF. CONTROLLED SUBSTANCES ACT, § 201 cmt. *in* HANDBOOK OF THE NATIONAL CONFER- ENCE OF COMMISSIONERS ON UNIFORM STATE LAWS AND PROCEEDINGS OF THE ANNUAL CONFERENCE MEETING IN ITS SEVENTY-NINTH YEAR, p. 229 (1970). The drafters of the Model Uniform Act established a concomitant penalty structure "broken down according to the schedule of the substance involved and the particular unlawful act[.]" *Id.*

with severe restrictions[,]" and "abuse of the substance may lead to severe psychic or physical dependence." I.C. § 37–2706. The legislature has adopted a similar sliding-scale approach to the imposition of penalties under the Idaho Act; the penalties associated with the possession of a controlled substance vary depending upon the schedule of the substance involved. Thus, it is a felony to possess Schedule I controlled substances which are narcotic drugs and Schedule II controlled substances, while it is merely a misdemeanor to possess a nonnarcotic Schedule I controlled substance or a controlled substance classified in Schedules III, IV, V and VI. I.C. § 37–2732(c)(1), (3).

■ Mindful of these classifications and given the conclusions of other Uniform Act jurisdictions, we find no indication that the Idaho legislature intended to criminalize only the possession of a usable quantity of cocaine, a Schedule II controlled substance. Schedule I and Schedule II narcotics and controlled substances are those which either have no accepted medical use in treatment in the United States or those having an accepted medical use in treatment which is severely restricted, coupled with a high potential for abuse. I.C. §§ 37–2704(b), –2706(b), –2722(a)–(b). However, Schedule III, IV, V and VI substances have accepted medical uses in treatment in the United States and are regulated, but not severely restricted. I.C. §§ 37–2708(b), –2710(b), –2712(b), –2713A(b), –2722(c)–(d). Thus, the availability of Schedule I and Schedule II substances is severely circumscribed at the outset as compared with those substances enumerated in Schedules III, IV, V and VI. In light of the limited availability of these substances, an individual's possession of such substances is almost illegal *per se*. Thus, although the legislature did not proscribe the possession of "any quantity" of cocaine as it did for methamphetamine, the legislature's classification of cocaine as a Schedule II controlled substance and its limited availability demonstrate that the legislature intended the possession of even trace or residual quantities of cocaine to fall within the scope of I.C. § 37–2732(c). Such an interpretation is consistent with the intent of the drafters of the Model Act and most other Uniform Act jurisdic-

tions. Therefore, we reject Groce's contention that the State must prove that he possessed a "usable quantity" in order to convict him of the unlawful possession of cocaine.

## C. The Evidence Is Sufficient To Support Groce's Conviction For The Possession Of Cocaine

Finally, Groce claims that the state failed to present sufficient evidence to support his conviction for the possession of cocaine. He specifically maintains that the minute amount of cocaine found on the scale is insufficient to support the inference that he formed the requisite criminal intent, that is, the knowledge that he was in possession of any cocaine.

■ A jury verdict will not be disturbed on appeal "if there is substantial evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Jaco,* 130 Idaho 870, 876, 949 P.2d 1077, 1083 (Ct.App.1997), *quoting State v. Boag,* 118 Idaho 944, 947, 801 P.2d 1295, 1298 (Ct. App.1990). The appellate court will not substitute its views for those "of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence." *State v. Knutson,* 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991). Where a defendant stands convicted, the evidence is viewed in the light most favorable to the state. *State v. Reyes,* 121 Idaho 570, 572, 826 P.2d 919, 921 (Ct.App.1992).

■ The possession of a controlled substance in violation of I.C. § 37–2732(c) "only requires a general intent, that is, the knowledge that one is in possession of the substance." *State v. Fox,* 124 Idaho 924, 926, 866 P.2d 181, 183 (1993). Pursuant to this formulation of general intent, the state must demonstrate beyond a reasonable doubt, through either circumstantial or direct evidence, that a defendant knowingly possessed a controlled substance, i.e., that the defendant had knowledge of the presence of a drug. *See State v. Seitter,* 127 Idaho 356, 360, 900 P.2d 1367, 1371 (1995).

■ The quantity of the controlled substance found in a defendant's possession, whether termed "identifiable," "trace," "measurable," "visible," or "a residue," is inextricably intertwined with a defendant's knowledge of the presence of the substance and control thereof. The greater the amount of a controlled substance found in a defendant's possession, the greater the inference of knowledge and control. However, under circumstances where the quantity of a controlled substance possessed by a defendant is *de minimis* and there is no other circumstantial evidence of possession, the inference of knowledge and control is significantly diminished. *See* Note, *supra*, at pp. 605–12. Circumstantial evidence which may be used to find the requisite knowledge, other than the mere fact of possession, include, for example, the manner in which the drug was wrapped, stored or carried; attempts to conceal, dispose of or destroy the contraband; attempts to avoid detection or arrest; the presence of drug paraphernalia; the possession of other contraband or cutting agents; indications that the defendant was under the influence of drugs; the presence of fresh needle marks; as well as the proximity, accessibility and location of the contraband. *See* Veilleux, *supra*, at 33–34 and cases cited therein.

■ According to testimony presented at trial, Groce informed Deputy Anderson that he was in the process of moving from Texas and that all items in the truck belonged to him. Following Groce's arrest, a search of his vehicle revealed syringes, a spoon with white powder residue, a scale with white powder residue, later identified as cocaine, and two plastic baggies containing chunky powder substances, later identified as amphetamine and methamphetamine. Under the totality of the circumstances presented here, given the corroborating array of other drugs and paraphernalia found in Groce's possession, coupled with his other actions, we conclude that there was substantial evidence presented to support the inference that Groce knowingly possessed cocaine, i.e., that Groce had knowledge of the presence of cocaine.

### III.

### CONCLUSION

We affirm Groce's judgments of conviction for three counts of possession of a controlled substance and one count of possession of drug paraphernalia.

Chief Judge PERRY and Judge LANSING, concur.