# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 45832, 45833, 45834, & 43835

STATE OF IDAHO,                          )
                                         )
   Plaintiff-Respondent,             )    **Boise, December 2021 Term**
                                         )
v.                                       )    **Opinion filed:  September 9, 2022**
                                         )
MATTHEW MICHAEL FOX,                     )
                                         )    **Melanie Gagnepain, Clerk**
   Defendant-Appellant.              )
                                         )

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Scott Wayman, District Judge.

The decisions of the district court are affirmed.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Appellant. Elizabeth A. Allred argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Respondent. Jeffery D. Nye argued.

_____

ZAHN, Justice.

Matthew Michael Fox appeals from his convictions for robbery, aggravated battery, possession of marijuana, and possession of methamphetamine. For the following reasons, we affirm the convictions.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

On May 17, 2017, Ciena Mulvaney drove Mark Mood to his friend's house to buy methamphetamine. Mulvaney stayed in the car as Mood walked into the house's garage. After entering the garage, Fox approached Mood and hit him in the face with a gun, rendering Mood briefly unconscious. After Mood regained consciousness, Fox held a gun to Mood's head and threatened to kill him if he did not give Fox money that Mood owed him. Mood gave Fox money that he owed Fox for the methamphetamine.

After the altercation, Fox ran out of the garage to Mulvaney's car. Fox told Mulvaney that she needed to take Mood to the hospital. He then attempted to take Mulvaney's keys from

1

her car but failed. However, Fox was able to take Mulvaney's phone from the car and walked away. Mood then emerged from the garage with a shirt over his face. Mood got back into Mulvaney's car and told her that "[Fox] has a gun and he hit me." Mulvaney and Mood then drove away. Fox followed Mulvaney and Mood in his own car, with a gun visible on the dashboard. Mulvaney, who was scared by the ordeal, pulled into the parking lot of Fernan Elementary School and began screaming for someone to call for help.

Marc Branscome, who was leaving his child's concert at the school, noticed Mulvaney in the parking lot hysterically trying to get someone to call 911. Branscome talked to Mulvaney, who conveyed information about the incident, including Fox's license plate number and vehicle information. Branscome subsequently called 911. Officer Procter responded to Branscome's 911 call and was directed to Mood and Mulvaney. The officer noted that Mulvaney was distraught with "labored breathing," and that Mood had an abrasion on the right side of his face. Officer Proctor received the license plate number and identification of Fox's car from Branscome and transmitted the information over the radio.

Officers Mortensen and Walther heard the dispatch announcement describing the vehicle and started searching for the car. The officers found a car matching the description parked outside of a Big Smoke store. The officers saw a woman in the passenger seat and waited for the driver. Fox exited the store and returned to the car and the officers arrested him. Fox had a black handgun in a holster on his left hip. The officers searched the car for the cell phone that was mentioned over dispatch. Additionally, the officers searched for drug paraphernalia because as the passenger exited the car the officers saw a broken glass pipe with burnt residue. During the search, the officers found (1) a briefcase with methamphetamine, marijuana, and other drug paraphernalia, (2) Mulvaney's cellphone, and (3) a Smith & Wesson handgun.

The night of May 17, the same day as Fox's arrest, Fox's former fiancé, Nicole Walker, called the Kootenai County Sheriff's department to report that her 9mm handgun was missing. Walker went into the police station the next day and identified the Smith & Wesson handgun found in Fox's car as hers.

B. Procedural History

The State charged Fox with the robbery of Mood (Count I), aggravated battery of Mood (Count II), grand theft by possession of stolen property for stealing Walker's gun (Count III), robbery of Mulvaney (Count IV), and possession of marijuana (Count V). On August 3, the State

2

moved to join a related case where Fox was charged with possession of the methamphetamine found in the vehicle (Count VI). Fox objected to the State's motion for joinder and moved to sever, arguing that Counts I and II should be tried in a separate trial from Counts III, IV, and V. At the hearing on the motions, Fox clarified his position, arguing that the district court should have three trials, one for Counts I, II, and IV, one for Count III, and one for Counts V and VI.

On September 22, the district court granted the State's motion for joinder and denied Fox's motion to sever. The district court explained that joinder pursuant to Idaho Criminal Rule ("I.C.R.") 8(a) was appropriate because "all of the events described took place on the same date and all arose out of the same act or series of transactions that were connected together from the original incident, giving rise to each one of those separate counts." Further, the district court denied the motion to sever and set the matter for trial after determining the joinder of the six counts would not cause unfair prejudice to Fox pursuant to I.C.R. 14.

The trial commenced on November 1, 2017, and lasted three days. The jury found Fox guilty on all counts except Count III, grand theft by possession of stolen property. Following the jury verdicts in the case before us, Fox pleaded guilty in three other cases that arose from other items recovered on the day of his arrest.

In the first case, Fox was charged with burglary for stealing a gun and grand theft by unauthorized control for selling the stolen gun. Fox pleaded guilty to the grand theft charge and the State dismissed the burglary charge.

In the second case, Fox was charged with grand theft for stealing a credit card, and two counts of burglary for using the credit card at Home Depot and Big Smoke. Fox pleaded guilty to grand theft by unauthorized control and the State dismissed the burglary charges.

In the third case, Fox was charged with four counts of possession of counterfeit notes for the possession of counterfeit money found in his vehicle, and three counts of grand theft by possession for the possession of three stolen guns. Fox pleaded guilty to one count of possession of counterfeit notes and one charge of grand theft by possession and the State dismissed the other charges.

The district court held one sentencing hearing on all four cases. On the case before us in this appeal, the district court imposed concurrent, unified sentences on each count of 20 years, with 10 years fixed. For the other three cases, the district court imposed concurrent, unified sentences of fourteen years, with ten years fixed on each count, to be served concurrently with

3

the 20-year sentences in this case. About a month after the sentencing hearing Fox filed motions pursuant to I.C.R. 35(b) for modification of all the sentences. The district court denied the motions.

Fox timely appealed.

## II.    ISSUES ON APPEAL

1. Whether the district court erred when it granted the State's motion to join and denied Fox's motion to sever?

2. Whether the district court erred when it admitted the State's Rule 404(b) evidence?

3. Whether the district court erred when it denied Fox's motion for a mistrial?

4. Whether the district court erred when it admitted the body camera footage and the 911 call?

5. Whether the prosecutor committed misconduct during his closing argument?

6. Whether the cumulative error doctrine mandates a retrial?

7. Whether the district court abused its sentencing discretion?

8. Whether the district court abused its discretion when it denied Fox's Rule 35 motion for a reduction of sentence?

## III.    ANALYSIS

**A. The district court did not err when it granted the State's motion to join and denied Fox's motion to sever.**

Fox argues that the district court erred when it granted the State's motion to join the counts against him and abused its discretion in denying his motion to sever the counts.

1. Standard of review

When reviewing trial court rulings on I.C.R. 8 and I.C.R. 14 motions, "a proper and complete analysis should analyze each rule separately" and "with their proper standards of review." *State v. Nava*, 166 Idaho 884, 889–90, 465 P.3d 1123, 1128–29 (2020). Whether a district court properly joined charges pursuant to I.C.R. 8 is a question of law over which this Court exercises free review. *Nava*, 166 Idaho at 891, 465 P.3d at 1130.

However, this Court reviews a district court's denial of a motion to sever pursuant to I.C.R. 14 for an abuse of discretion. *Id.* at 890, 465 P.3d at 1129. Under the abuse of discretion standard, this Court asks "whether the trial court: '(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by

4

the exercise of reason.'" *State v. Sarbacher*, 168 Idaho 1, 4, 478 P.3d 300, 303 (2020) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

2. <u>The district court did not err in granting the State's motion for joinder.</u>

Fox argues that the charges against him were improperly joined because they did not result from the same act or transaction and were not part of a common scheme or plan. Fox maintains that evidence of different crimes that occurred in close temporal proximity to each other is insufficient to tie the charges together as part of the same act or transaction. Further, he contends that nothing in the allegations demonstrates the existence of a common scheme or plan in which the acts are so similar that proof of one tends to prove the others. Finally, Fox argues that the State waived the right to present argument on whether all six charges were properly joined because the State only presented argument concerning the joinder of Count VI.

The State claims there are three bases for joinder under I.C.R. 8(a), contending that charges may be joined where they (1) are based on the same act or transaction, (2) are based on two or more acts or transactions connected together, or (3) constitute parts of a common plan or scheme. Based on its interpretation, the State asserts that Fox only provided argument opposing the first and third bases, but not the second. The State argues that joinder was proper under a "connected together" theory because Fox committed all the acts giving rise to the charges against him in rapid succession on May 17, 2017, and there is an overlap in witnesses for all the charges.

The district court found that joinder was proper because all the events took place on the same date and arose out of the same act or series of transactions. Additionally, the district court explained that all the charges were connected to the original incident.

We first address Fox's argument that the State waived any argument that <u>all</u> charges were properly joined because it only addressed the joinder of Count VI in its brief. While Fox is correct that the State only explicitly referenced Count VI in its briefing to this Court, the State's analysis of the joinder issue discusses the joinder of all six charges. This is sufficient to preserve the argument concerning all six charges on appeal. We now turn to the merits of Fox's argument.

*a. The plain language of I.C.R. 8(a) provides three bases for joinder.*

In support of its argument that I.C.R. 8(a) allows joinder in three circumstances, the State directs this Court to the plain language of the rule. The State contends that the use of the word "or" between three different phrases in I.C.R. 8(a) demonstrates there are three bases for joinder.

5

Fox, in reply, contends that reading "two or more acts or transactions connected together or constituting parts of a common scheme or plan" as two distinct bases for joinder would be contrary to ordinary grammar because "constituting parts of a common scheme or plan" is not an independent clause and would not make sense on a standalone basis. That is to say, allowing two or more charges to be joined if they are based on "constituting parts of a common scheme or plan" is not a grammatically correct sentence, but allowing charges to be joined if they are based on "two or more acts or transactions connected together or constituting parts of a common scheme or plan" is. Fox also argues that I.C.R. 8(a) contains no commas, implying that it is a list of two, as opposed to three, permissible bases for joinder.

Idaho Criminal Rule 8(a) addresses joinder of offenses and provides, in pertinent part:

> Two or more offenses may be charged on the same complaint, indictment or information if the offenses charged, whether felonies or misdemeanors or both, are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

When considering joinder, courts may "consider what was alleged by the State, not merely what the proof at trial ultimately showed." *State v. Anderson*, 168 Idaho 758, 767, 487 P.3d 350, 359 (2021) (citing *Nava*, 166 Idaho at 891, 465 P.3d at 1130).

This Court interprets court rules in largely the same fashion as it interprets statutes. *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017). However, because this Court authors the rules, we are not fettered by the constitutional separation of powers in interpreting those rules:

> Today we make it clear that while the interpretation of a court rule must always begin with the plain, ordinary meaning of the rule's language it may be tempered by the rule's purpose. We will not interpret a rule in a way that would produce an absurd result. Instead, in keeping with the Idaho Criminal Rules' aim of providing for the just determination of every criminal proceeding . . . we construe the rules to secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay.

*Id.* (alterations, quotation, and internal citations omitted) (citing I.C.R. 2(a)). "This Court must give effect to all the words in [a court rule] so that none will be void or superfluous." *See State v. Lantis*, 165 Idaho 427, 429, 447 P.3d 875, 877 (2019).

Fairly read, I.C.R. 8(a) demonstrates three bases for joinder. The use of the word "or" indicates that charges may be joined where two or more offenses: (1) are based on the same act or transaction, (2) are based on two or more acts or transactions connected together, *or* (3)

constitute parts of a common scheme or plan. Idaho case law also suggests "connected together" is not subsumed within the common scheme or plan language. *See State v. Cirelli*, 115 Idaho 732, 734, 769 P.2d 609, 611 (Ct. App. 1989) ("[T]wo or more offenses may be charged on the same information if the offenses are based on 'acts or transactions connected together.'"); *State v. Cochran*, 97 Idaho 71, 73, 539 P.2d 999, 1001 (1975) ("[T]he test for joinder is whether the offenses charged are alleged to have been part of a connected series of acts or transactions.").

We find this interpretation to be consistent with the Idaho Criminal Rules' instruction to construe the rules "to secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay," and their purpose of "provid[ing] for the just determination of every criminal proceeding." I.C.R. 2(a). Our holding today supports principles of judicial and trial economy as well as simplicity in criminal procedure. Interpreting I.C.R. 8(a) to allow three bases for joinder does not, as Fox contends, eviscerate the purpose of the Criminal Rules. Idaho Criminal Rule 14 provides a backstop to prevent joining charges in a manner that may unfairly prejudice a defendant. *See State v. Wilske*, 158 Idaho 643, 644–45, 350 P.3d 344, 345–46 (Ct. App. 2015) (citing *State v. Field*, 144 Idaho 559, 564–65, 165 P.3d 273, 278–79 (2007)) (explaining that a "defendant may obtain relief from the joinder pursuant to Idaho Criminal Rule 14, by showing that joinder will result in unfair prejudice."). Thus, our holding is not at odds with a purpose of providing a "just determination of every criminal proceeding" because defendants have adequate procedural safeguards to prevent the prejudicial joinder of charges against them.

Fox also argues the grammar of the rule compels us to conclude there are only two bases for joinder. We note, however, that punctuation is not a favored method of interpretation. *See, e.g.*, *Ewing's Lessee v. Burnet*, 36 U.S. 41, 54 (1837) ("Punctuation is a most fallible standard by which to interpret a writing . . . if [the writing's true meaning is apparent] on judicially inspecting the whole, the punctuation will not be suffered to change it."). As we discussed above, the rule is fairly read as identifying three bases for joinder. We decline to employ rules of punctuation or grammar to override a fair reading of the rule.

Finally, Fox contends that our decision in *Nava* holds there are only two bases for joinder. Fox has misread our holding in that case. In *Nava*, this Court was not asked to consider how many bases for joinder existed under I.C.R. 8(a); rather, the issue presented concerned whether charges against a defendant were properly joined under a common scheme or plan

theory. *See* 166 Idaho at 891, 465 P.3d at 1130. This Court's language in *Nava* stating that I.C.R. 8(a) allowed joinder in two circumstances was not directed at squarely addressing the issue before this Court today—whether the "connected together" language is a separate basis for joinder under I.C.R. 8(a). To the extent our use of the phrase "two circumstances" created confusion, we now clarify that we were not called upon, nor did we, decide that the "same act or transaction" language was subsumed within the "common scheme or plan" language. Consequently, we did not hold in *Nava* that there are only two bases for joinder. We now resolve the issue that was not raised in *Nava* and hold that Rule 8(a) sets forth three bases for joinder, one of which exists when charges "are based on the same act or transaction."

Our analysis, however, is not at an end simply because we hold that charges may be joined if they are sufficiently connected together. We must also address what standard governs joinder under a connected together theory, and whether the charges against Fox satisfy that standard.

> b. *The charges against Fox were properly joined because they were sufficiently connected together.*

The State argues that charges may be joined under a "connected together" theory if they stem from a series of acts occurring in rapid succession. The State relies on *State v. Gamble* for the premise that "connected together" means that charges share a "factual connection." 146 Idaho 331, 337, 193 P.3d 878, 884 (Ct. App. 2008). However, *Gamble* is of limited use as the Court of Appeals did not expand on or otherwise explain the "factual connection" language in that case. *See id.*

The State also relies on *State v. Anderson*, a Court of Appeals decision that applied "connected together" as an independent basis for joinder under I.C.R. 8(a). 138 Idaho 359, 362, 63 P.3d 485, 488 (Ct. App. 2003). In *Anderson*, the Court of Appeals considered whether a resisting arrest charge and a misdemeanor battery charge against a defendant were properly joined. *Id.* at 361–62, 63 P.3d at 487–88. The Court of Appeals held that the offenses did not constitute "two or more acts or transactions connected together," reasoning that the charges occurred three months apart, "involved different parties, and occurred in different locations." *Id.* at 361, 63 P.3d at 487. Conversely, the Court of Appeals noted that charges may be sufficiently connected together if they are connected by overlapping evidence or overlapping witnesses and would be most efficiently presented by a joint trial. *Id.* at 362, 63 P.3d at 488.

The approach suggested by the Court of Appeals in *Anderson* is both reasonable and consistent with how other jurisdictions apply the "connected together" language in their joinder rules. For instance, Federal Rule of Criminal Procedure 8(a) provides that two or more offenses may be joined if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). In *United States v. Richardson*, the D.C. circuit interpreted the connected together language to allow joinder in cases where there is substantial overlap of evidence to eliminate the need to prove essentially the same evidence twice, thus promoting trial economy and convenience. 161 F.3d 728, 734 (D.C. Cir. 1998). In *State v. Dewhitt*, the Oregon Court of Appeals construed Oregon's joinder statute as allowing the joinder of charges that are "connected together." 368 P.3d 27, 30 (Or. Ct. App. 2016). The appellate court held that charges may be joined on a connected together theory where they are linked by substantial overlapping proof, the testimony of the same witnesses, and the general sequence of events leading to the charges. *Id.* at 34.

We find the above authorities well-reasoned and hold that joinder of criminal charges is appropriate under a connected together theory when the charges are logically related and involve a large amount of overlapping proof. *See, e.g.*, *Roberts*, 783 F.2d at 769; *Anderson*, 642 F.2d 281, 284. Where charges are linked by a common nexus of witnesses, evidence, or time, joinder under I.C.R. 8(a) may be appropriate. *See Dewhitt*, 368 P.3d at 34.

Applying that rule to the case at hand, we hold that the district court did not err in allowing the charges against Fox to be joined because they were logically related and involved a large amount of overlapping proof. Here, Officer Proctor responded to the 911 call—relating to the battery, assault, and robbery of Mulvaney and Mood—at 6:50 p.m. Fox was subsequently arrested at 8:29 p.m. for the aggravated battery. At the same time, officers searched Fox's car in the Big Smoke parking lot and found methamphetamine and marijuana in a briefcase. The handgun that gave rise to the grand theft charge was also found in Fox's vehicle during the same search. Therefore, all six charges shared a temporal link, as they were discovered at nearly the same time. Further, several of the witnesses overlapped, including Officer Mortensen, who had testimony to give on all six charges and the events at issue or preceding each of the charges were essentially the same. As such, we hold that the district court did not err in concluding the charges were properly joined because they were connected together.

3. <u>The district court did not err in denying Fox's motion to sever.</u>

Fox argues the charges against him should have been severed into three separate trials: Counts I, II, and IV in one trial, Count III in one trial, and Counts V and VI in one trial. Fox argues that he suffered three sources of prejudice from the district court's decision to try the charges together: the "possible confusion or accumulation of evidence, confounding of defenses, and the danger of guilty verdicts based on criminal disposition." The State argues that Fox failed to preserve his arguments on the first and third sources of prejudice and that he failed to establish the second source of prejudice was present.

The district court denied Fox's motion to sever because it found that Fox was not subjected to unfair prejudice by having the charges heard in one trial:

> [w]hether or not to testify is a decision that every defendant has to face in – in every case and that decision is up to the defendant with the advice of his counsel. I don't find in this case that an unstated desire to testify on one charge versus another creates automatic unfair prejudice to a defendant.

A trial court may grant separate trials of charges when a party is prejudiced by the joinder of offenses. I.C.R. 14. When considering a motion to sever pursuant to I.C.R. 14, trial courts have considered three potential sources of prejudice in analyzing whether joinder is prejudicial:

> (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated; (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.

*Nava*, 166 Idaho at 893, 465 P.3d at 1132 (citation omitted).

We first consider the State's argument that Fox failed to preserve his claims concerning the first and third sources of prejudice identified in I.C.R. 14. "When issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered." *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996); *see also* I.A.R. 35. Fox's argument on the first and third sources of prejudice consists of conclusory assertions that such prejudice was present but lacks any specific argument supporting his assertions. We conclude that Fox failed to preserve these issues for appeal because he failed to support them with sufficient argument or authority.

10

However, on the second source Fox asserts that his defenses were confounded because he wished to testify regarding some of the charges against him, but not others. Idaho case law is scant on confounding defenses under I.C.R. 14. However, this Court has held that a defendant did not suffer prejudice when the trial record showed that the defendant was able to effectively raise and argue his defenses in opening and closing arguments. *Anderson*, 168 Idaho at 768, 487 P.3d at 360.

Both Fox and the State rely on out of jurisdiction cases to support their positions. The language of Federal Rule of Criminal Procedure 14 is similar, but not identical, to I.C.R. 14.[1] "In cases where no Idaho case law is directly on point, federal case law interpreting a similar federal rule can be persuasive." *State v. Loera*, 167 Idaho 533, 538, 473 P.3d 802, 807 (2020) (citation omitted).

The State cites four federal cases—*United States v. Cooper*, 643 F. App'x 617 (9th Cir. 2016); *Closs v. Leapley*, 18 F.3d 574 (8th Cir. 1994); *United States v. Alosa*, 14 F.3d 693 (1st Cir. 1994); and *Baker v. United States*, 401 F.2d 958 (D.C. Cir. 1968)—for the premise that a defendant must show the importance of his testimony on one count and the strong need to refrain from testifying on another count to demonstrate prejudice based on confounded defenses. The first case, *Cooper*, is an unpublished disposition, which offers little analysis outside of repeating the State's contention that a defendant must show that he has "important testimony" on one count and a "strong need to refrain from testifying" as to the other counts. *Cooper*, 643 Fed. App'x at 617–18. *Closs* concerned a petition for habeas corpus in which a defendant argued that the joinder of charges against him was so prejudicial as to amount to a denial of his right to due process. 18 F.3d at 577. The Eighth Circuit noted that to establish prejudice based on confounding defenses, a defendant must make a "persuasive and detailed showing regarding the testimony [that the defendant] would give on the one count he wishes severed and the reason he cannot testify on the other counts." *Id.* at 578 (quoting *United States v. Possick*, 849 F.2d 332, 338 (8th Cir. 1988) (alteration in original). In *Alosa*, the First Circuit, reviewing the denial of a defendant's motion to sever related gun-charges against him, stated, "a defendant may deserve a severance of counts where the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other."

[1] "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

14 F.3d at 695 (internal quotation marks omitted). Finally, in *Baker*, the D.C. Circuit acknowledged the potential for prejudice stemming from a defendant wishing to testify as to only some of the counts against him, but held that "it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine[.]" 401 F.2d at 976-77.

Fox, in turn, cites *Cross v. United States*, 335 F.2d 987 (D.C. Cir. 1964) for the premise that joinder may prejudice a defendant because the defendant cannot weigh the risks and adverse effects of testifying separately to each count, risking a defendant being coerced into testifying. In *Cross*, the D.C. Circuit noted the various factors a defendant may balance in choosing whether to testify in his defense and discussed how the joinder of multiple charges against a defendant may complicate that analysis. 335 F.2d at 989. The court then considered the defendant's specific testimony, concluding that defendant "had ample reason not to testify" as to one count. *Id.* at 990. Thus, the court concluded that joinder prejudiced the defendant because it "embarrassed and confounded" his defenses. *Id.* at 991.

We agree with and hereby adopt the approach demonstrated in the cases cited by the State. While we do not believe that Fox's attorney needed to reveal his case strategy in open court, Fox needed to provide something more to the district court to establish prejudice than his bare assertion that joining the charges would confound his defenses. Here, Fox concedes that he did not go into the details of his defenses with the district court but argues it was clear to the parties and the district court that he would assert self-defense for the aggravated battery, that the passenger in his vehicle possessed the illegal substances, and that he had an ownership interest in Walker's handgun. That said, this does not indicate how his defenses were confounded by the joinder of the charges against him. With no explanation concerning the importance of Fox's testimony on certain charges and his strong need to remain silent on others, the district court did not err in denying Fox's motion to sever. The district court perceived the issue as one of discretion, acted within that discretion, applied the applicable legal standards and reached its decision through the exercise of reason. We therefore affirm the district court's decision denying Fox's motion to sever.

We also note that the trial transcript indicates that Fox presented defenses at trial. Fox's counsel asserted self-defense for the battery charge in closing arguments. Further, the jury

received instructions regarding self-defense. Although Fox was convicted on the battery charge, the jury found Fox not guilty on Count III, concerning possession of Walker's gun.

**B. The district court erred in admitting the State's I.R.E. 404(b) evidence, however, the error was harmless.**

Before trial, the State filed a notice of intent to introduce I.R.E. 404(b) evidence at trial. Two days after Fox's arrest officers found methamphetamine and drug paraphernalia containing methamphetamine residue in a shop on the property, and marijuana in Fox's bedroom. The State claimed the evidence was relevant to prove Fox's knowledge of the marijuana and methamphetamine found in Fox's vehicle two days earlier—especially if Fox argued that he did not know the contraband was in his car. The State reiterated this argument during the trial. Fox argued that the probative value of the 404(b) evidence was outweighed by the unfair prejudice because: (1) the State failed to establish the evidence as fact since it was found two days after Fox's arrest and other people had access to the areas of Fox's home where the drugs were discovered, and (2) the evidence was offered as propensity evidence.

The district court granted the State's motion and admitted the evidence on the basis that it was relevant to prove Fox's knowledge of the possession of drugs. The district court further concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice because the fact that there were drugs in Fox's home did not affect his ability to defend against the charges at issue. The district court gave the jury a limiting instruction, directing them that the evidence should only be considered for the limited purpose of proving the defendant's motive, intent, plan, knowledge, or absence of mistake or accident.

On appeal, Fox argues the State's I.R.E. 404(b) evidence, which included drugs and drug paraphernalia found at Fox's residence, was inadmissible because the evidence was irrelevant, was offered to show criminal propensity, and was unfairly prejudicial.

1. Standard of Review

Evidence of other crimes or wrongs cannot be admitted for purpose of showing a defendant's propensity for criminal behavior. *State v. Jones*, 167 Idaho 353, 359, 470 P.3d 1162, 1168 (2020); I.R.E. 404(b). However, 404(b) evidence may be admissible, if the prosecution provides notice, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* To determine whether 404(b) evidence is admissible, a court must engage in a two-tiered analysis.

13

The first tier concerns whether the evidence is relevant and has two steps:

> First, the trial court must determine whether there is sufficient evidence to establish the other crime or wrong as fact. Second, the trial court must determine whether the evidence of the other act would be relevant to a material and disputed issue concerning the crime charged, other than propensity.

*Nava*, 166 Idaho at 893, 465 P.3d at 1132 (citing *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009)) (internal citations and quotations omitted). The first tier is reviewed de novo. *Id.*

The second tier requires the trial court to perform a balancing test pursuant to I.R.E. 403. *Id.* at 1133. Even if Rule 404(b) evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* The second tier is reviewed under the abuse of discretion standard. *Id.*

### 2. The 404(b) evidence was sufficiently established as fact.

We first examine whether the 404(b) evidence was relevant. The first step in our analysis is to determine if the evidence of the drugs found at Fox's residence was established as fact. *See Grist*, 147 Idaho at 52, 205 P.3d at 1188 ("First, the trial court must determine whether there is sufficient evidence to establish the other crime or wrong as fact."). The evidence at trial established that the officers found the drugs and drug paraphernalia in Fox's shop, where only Fox had a key, and in Fox's bedroom. This was sufficient to establish the evidence as fact.

### 3. The evidence was not relevant for the proffered purpose.

We next examine whether the evidence was relevant to a material and disputed issue concerning the crime charged, other than propensity. *Id.* On appeal, the State asserts the evidence was admissible to demonstrate Fox's knowledge that the items in his vehicle were contraband because he possessed similar illegal contraband at his home. Fox claims the illegal nature of the contraband was not in dispute and, therefore, the only purpose for admitting the evidence was to demonstrate his criminal propensity.

Fox pleaded not guilty to the possession charges, which required the State to affirmatively prove that Fox had both knowledge and control of the controlled substances found in his vehicle. *State v. Cardoza*, 155 Idaho 889, 893, 318 P.3d 658, 662 (Ct. App. 2014) ("the State [is] required to prove that [the defendant] had both knowledge and control of the methamphetamine found in [his vehicle]."); *State v. Palmer*, 147 Idaho 210, 215, 207 P.3d 186, 191 (Ct. App. 2009); I.C. § 37-2732. In its notice of intent to introduce 404(b) evidence at trial, the State asserted that the evidence was admissible under Rule 404(b) to prove knowledge of the

14

methamphetamine and marijuana found in Fox's vehicle. When the motion was argued during the trial, the State contended:

> The issue, in terms of the two controlled substances charges, possession of meth and possession of marijuana, is knowledge. Can I prove that he knew it was there? I think it's very relevant to prove that knowledge if I can show in a shop two days later that he had, essentially, exclusive control of and admitted to making pipes there, that there was a pipe with methamphetamine that's similar to the pipe that was found in the car.
>
> I think it also is relevant in terms of knowledge that the marijuana that was found in the car, you have marijuana in his bedroom that's found by the police two days afterwards. So I think the drugs that are found in the place where he was living a couple of days afterwards go directly to prove knowledge, in terms of the drugs found in his car on the 17th. Especially when you have denials as it pertains to the methamphetamine.

In concluding the evidence was relevant for the non-propensity purpose of knowledge, the district court stated:

> In this case, I find there is relevance in the fact that the residence and shop that were used or occupied by the defendant, shortly after the alleged offense occurred here that has been charged have located in them drug paraphernalia, glass tubing, scale, and baggies, which were similar to what was found in the vehicle and – as well as marijuana that was found at the residence. So I do find that there is relevance insofar as that the, if believed by the jury, they could – could infer that if the drugs were at his house that he would be unlikely not to have knowledge of the drugs in the vehicle if he was there. So it is relevant for the purposes of proving knowledge of the possession of the drugs, that in fact, it may have been drugs.

We hold that the district court erred in admitting the evidence because the State failed to establish it was relevant for a non-propensity purpose. Courts "can justify the use of uncharged misconduct to prove 'knowledge' on the grounds that it requires no use of the forbidden character inference and where used to prove *state of mind*, no conduct need follow. But [courts] must keep alert that the forbidden propensity inference does not sneak in, particularly in cases where 'knowledge' supposedly stems from repetitive conduct." 22B WRIGHT & MILLER, FED. PRAC. & PROC. EVID. § 5253 (2d ed.) (emphasis added).[2] We do not agree that evidence that Fox had "similar" items at his home was relevant to establishing Fox's state of mind concerning the items found in his vehicle two days earlier. While the State argued that the evidence was not being offered for propensity, the State's only argument offered at trial in support of admission

---

[2] Federal Rule of Evidence 404(b) is substantially similar to I.R.E. 404(b). As such, we find this authority interpreting the federal rule instructive. *See Loera*, 167 Idaho at 538, 473 P.3d at 807.

was essentially that if Fox had drugs and paraphernalia at his home, then he knew he had drugs and paraphernalia in his car two days earlier. This is a propensity purpose.

Further, although the prosecutor argued in his closing that there were dollar signs on the marijuana baggies found in Fox's room and on the marijuana baggies found in his car, that information was not included in the State's offer of proof made during the argument on the motion. Rather, that testimony only came in after the district court granted the State's motion to admit the evidence. We take no position on whether, had the State presented that similarity as part of its offer of proof, the State would have established the evidence was admissible to establish Fox's knowledge concerning the marijuana in his car.

To summarize, the State failed to establish that the evidence of controlled substances and paraphernalia found at Fox's home was relevant for a non-propensity purpose. We therefore conclude that the district court erred in admitting the evidence of the contraband found in Fox's shop and bedroom. Given our conclusion, we do not need to conduct a Rule 403 balancing.

4. The admission of the 404(b) evidence constituted harmless error.

The State maintains that if this Court determines it was an abuse of discretion to admit the 404(b) evidence, the error was harmless because the prosecutor provided overwhelming evidence of guilt on both of the drug charges. Fox asserts that the State's argument ignores half of the harmless error standard. He argues that the State only addressed the other evidence in the record but failed to evaluate the probative force of the error. Fox maintains that the probative force of the error was significant and likely influenced the jury's decision. He notes that the State spent significant time presenting the 404(b) evidence—including three witnesses and seven exhibits—and that the State highlighted the 404(b) evidence during closing arguments.

"A defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt." *State v. Garcia*, 166 Idaho 661, 673, 462 P.3d 1125, 1137 (2020) (citing *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). This Court utilizes a two-part analysis to assess harmless error, considering: (1) "[t]he probative force of evidence untainted by error against a defendant" and (2) the weight of the untainted evidence "against the probative force of the error itself." *Id.* at 675, 462 P.3d at 1139.

Here, the State explains that other evidence admitted at trial proved Fox's guilt on the two possession charges, namely, the fact that Fox did not dispute that the substances were methamphetamine and marijuana and that the officers found the "substances in Fox's car, behind Fox's seat, in a briefcase identified by Fox's ex-fiancé as Fox's briefcase." However, the State does not weigh the probative force of the evidence untainted by error against the probative force of the error itself. Because the State did not assert or support this argument, Fox urges the Court to determine that the State failed to meet its burden of proving that the error is harmless.

Fox relies on *State v. Almaraz*, where this Court determined that "the State failed to meet its burden of proving that the error is harmless" when the State failed to discuss harmless error in its briefing and only vaguely referenced harmless error in its oral argument. 154 Idaho 584, 599, 301 P.3d 242, 257 (2013). This case is unlike *Almaraz* because here the State raised harmless error in its briefing. Yet, Fox correctly points out that the State failed to argue both parts of the harmless error test articulated above. In *Garcia*, which was issued five months before the State filed its brief in this matter, we held that the proper showing for harmless error was not "overwhelming evidence" of the defendant's guilt. *Garcia*, 166 Idaho at 674, 462 P.3d at 1138. Rather, the harmless error analysis "requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id*. Despite the State's failure to argue the correct standard, and for purposes of this case only, we conclude the State has presented sufficient argument to allow us to determine whether the district court's error was harmless in this instance.

Here, when weighing the error of admitting the 404(b) evidence against the other evidence the jury considered, we hold the error is harmless. The jury was presented with significant evidence that the drugs and paraphernalia found in the car belonged to Fox, namely, that the substances were found in Fox's car, behind Fox's seat, and in a briefcase identified by Fox's ex-fiancé as Fox's briefcase. The fact that controlled substances were found at Fox's home did not significantly prejudice Fox when weighed against the significant evidence indicating that the drugs found in the car belonged to Fox. Accordingly, we hold the district court's error in admitting the 404(b) evidence did not affect the jury's verdict. That being said, we caution the State to not read this decision as encouragement to continue to argue the "overwhelming evidence" standard for harmless error. It is unlikely this Court will continue to address the State's harmless error arguments on appeal as we have done today and as we did in *Garcia.*

17

**C. The district court did not err in denying Fox's motion for a mistrial.**

At trial, Officer Mortensen testified concerning his and Officer Walther's conduct at the Big Smoke store, where they located and searched Fox's car. The prosecutor asked if Officer Mortensen went into the Big Smoke store after finding Fox's parked car. Officer Mortensen answered, "I was going – inside the vehicle counterfeit money was found–." Fox objected on relevancy grounds. The district court sustained the objection, concluding the testimony was irrelevant, and instructed the jury to disregard the answer. Following the district court's curative instruction the prosecutor continued questioning Officer Mortensen:

Q. When you went into Big Smoke, were you looking for cash?

A. I was looking for money spent, yes.

Q. And what did – what did that pertain to?

[Overruled objection.]

Q. Let me ask it this way, Mr. Mortensen. Were you – did you go into Big Smoke to further the investigation as it pertained to the – alleged robbery?

A. No, that was not for the robbery. That was for other items found.

[Overruled objection.]

The next day Fox moved for a mistrial based on the testimony and the following day, the district court denied the motion, concluding Fox had not been deprived of a fair trial.

On appeal, Fox argues that the district court erred in denying his motion for a mistrial because Officer Mortensen's testimony mentioning the counterfeit money found in Fox's vehicle was highly prejudicial. Fox asserts that Officer Mortensen's testimony indicated that Fox may have been involved in other criminal activities, which may have contributed to the jury's guilty verdicts. The danger of prejudice was amplified by the follow-up questions and answers, which Fox argues elicited additional questioning concerning an investigation of "money spent." Fox argues that while the district court struck the initial testimony concerning the counterfeit money and gave a limiting instruction to the jury to disregard the testimony, the district court did not strike the follow-up questions.

When there is a motion for mistrial based on prosecutorial error supported by a contemporaneous objection, we review the denial of a motion for mistrial for reversible error. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). The Court's focus when deciding whether there is reversible error "is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only

if that incident, viewed retrospectively, constituted reversible error." *Id.* (citations omitted). In this case, Fox's counsel objected to the alleged misconduct, including making a motion for a mistrial. Therefore, we review the record to determine if there was prosecutorial misconduct, and if so, whether the error was harmless. *Id.*

1.  The prosecutor's continued questioning constituted misconduct.

The State never provided an admissible purpose for Officer Mortenson's initial testimony about the counterfeit money found in Fox's vehicle. Accordingly, the district court was correct in sustaining Fox's initial objection to the Officer's answer and giving the jury a curative instruction to disregard the officer's testimony. The district court, however, did not strike the testimony following its curative instruction. The prosecutor's subsequent questioning suggested that Fox had counterfeit money, because the prosecutor specifically asked if the Officer was looking for cash after the previous testimony about counterfeit money.

On appeal, the State does not argue that the prosecutor's questioning was relevant to a material issue. Rather, it asserts that the brevity and vagueness of Officer Mortenson's statements did not deprive Fox of a fair trial. *See State v. McClain,* 154 Idaho 742, 747, 302 P.3d 367, 372 (Ct. App. 2012) (holding that even if admitting the 404(b) evidence was an error, when considering the "strength of the State's evidence, and the brevity and vagueness" of the 404(b) evidence, the error was harmless.)

The prosecutor's continued questioning following the district court's curative instruction was improper, given the district court's ruling and curative instruction just moments earlier. The prosecutor's questioning and the officer's testimony was irrelevant to any of the six charges against Fox. The district court therefore erred in overruling Fox's objection to the testimony.

2.  The district court's error in allowing the testimony was harmless.

Although the statements were erroneously admitted, the officer's testimony likely did not prejudice Fox. The testimony was vague and brief. As previously discussed, the probative force of the State's evidence untainted by error is significant given the testimony by multiple witnesses concerning Fox's actions and the multiple pieces of evidence indicating that the controlled substances in the vehicle belonged to Fox. We conclude that the district court's error in overruling Fox's objection was harmless because the probative force of the record as a whole outweighed the probative force of the erroneously admitted testimony. We therefore affirm the district court's decision denying Fox's motion for a mistrial.

19

**D. The district court did not err in admitting exhibit 1, but did err in admitting exhibit 7; however, the error was harmless.**

Fox argues that the district court abused its discretion by allowing the State to present exhibits 1 and 7, because they contained double and/or triple hearsay. Exhibit 1 is Officer Proctor's body camera video wherein Mulvaney told the officer that Mood was pistol whipped. Exhibit 7 is an audio recording of the 911 call, which includes Branscome's statements conveying Mulvaney's statements to the 911 operator.

The district court overruled Fox's trial objections to State's exhibits 1 and 7 because it concluded the hearsay statements fell under the excited utterance exception. With regard to exhibit 7, when the district court asked the prosecutor to address the objection, the prosecutor stated, "I believe I've laid the foundation for excited utterances, Judge." After the district court overruled the general objection to the admission of exhibit 7, Fox then made a specific objection to Branscome's statements to the 911 operator, explaining the excited utterance exception did not apply to Branscome's statements. The district court overruled the objection without asking the prosecutor to address the objection.

1. Standard of Review

"The trial court has broad discretion in deciding whether to admit hearsay evidence under one of the exceptions, and this Court will not overturn an exercise of that discretion absent a clear showing of abuse." *State v. Stanfield*, 158 Idaho 327, 331, 347 P.3d 175, 179 (2015). Hearsay is not admissible unless an exception applies. I.R.E. 802. An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." I.R.E. 803(2). A hearsay statement is properly admitted under the excited utterance exception if: "(1) an occurrence or event sufficiently startling to render inoperative the normal reflective thought process of an observer; and (2) the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." *State v. Thorngren*, 149 Idaho 729, 732, 240 P.3d 575, 578 (2010) (citation omitted). To admit evidence under the excited utterance exception, "a court considers the totality of the circumstances, including: the amount of time that elapsed between the startling event and the statement, the nature of the condition or event, the age and condition of the declarant, the presence or absence of self-interest, and whether the statement was volunteered or made in response to a question." *Id.* (internal quotations omitted).

20

1. The State established that exhibit 1 was admissible under the excited utterance exception.

With regard to Mulvaney's statement that Mood had been pistol whipped, Fox only disputes one requirement of the excited utterance analysis—that Mulvaney did not experience a sufficiently startling event because Mulvaney did not witness the battery on Fox. A startling event is one that renders inoperative the normal reflective thought process of an observer. *See Thorngren*, 149 Idaho at 732, 240 P.3d at 578. The reliability is "furnished by the excitement suspending the declarant's powers of reflection and fabrication." *State v. Hansen*, 133 Idaho 323, 325, 986 P.2d 346, 348 (Ct. App. 1999). Witnessing a startling event is not a requirement; news of a shocking event may also render inoperative the reflective thought process of an observer. *See Thorngren*, 149 Idaho at 733, 240 P.3d at 579 ("[T]his Court recognizes that news of a loved one's unexpected death would be sufficiently shocking to render inoperative the reflective thought process of a declarant for a brief period of time.").

The evidence presented at trial established that Mulvaney's experience surrounding the robberies and battery was sufficiently startling to render inoperative her normal reflective thought process. Mulvaney not only saw Mood bleeding from his face and heard him say that he was struck in the face with a gun, but Fox stole Mulvaney's phone and tried to steal her keys, which in turn pulled Mulvaney's glasses from her face and cut her head. Additionally, Fox followed Mood and Mulvaney with a gun on his dashboard. Officer Proctor testified that Mulvaney "was distraught – severely distraught and labored breathing. Couldn't really talk. She was just kind of all over the place." That Mulvaney did not directly observe Fox hitting Mood did not render the other surrounding events any less startling. Accordingly, we hold the district court did not err in admitting State's exhibit 1.

2. The State failed to establish that exhibit 7 was admissible under the excited utterance exception.

Fox asserts that Branscome's 911 call contained three layers of hearsay: (1) Mood's statements to Mulvaney, (2) Mulvaney's statements to Branscome, and (3) Branscome's statements to the 911 operator. Fox does not challenge the first layer of hearsay. As to the second layer, Fox again argues Mulvaney's statement to Branscome are not admissible because she had not experienced a sufficiently startling event. Our analysis of this argument mirrors our analysis regarding Muvaney's statements to Officer Procter. Because the evidence demonstrated that Mulvaney was subjected to a sufficiently startling event to render inoperative her normal thought

process, we conclude that Mulvaney's statements to Branscome also qualify under the excited utterance exception.

With regard to the third layer - Brancome's statements to the 911 operator, the district court found that the excited utterance exception, which was the only exception offered by the prosecutor, applied. We conclude that Branscome's statements to the 911 operator do not fall under the exception because he did not experience a startling event or condition. The audio of the 911 call indicated that Branscome was calm and not under the stress or excitement of a startling event. Because Branscome's statements do not fall under the excited utterance exception, the district court erred when it admitted State's exhibit 7 over Fox's objection.

The State also argues for the first time on appeal that Branscome's statements to the 911 operator were admissible as present sense impressions. The State concedes that arguments brought for the first time on appeal are generally waived but claims that the district court denied the State an opportunity to respond to the objection and thereby deprived it of the opportunity to state this basis below. The State's concession on this point indicates its recognition that "issues not raised below will not be considered by this [C]ourt on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." *State v. Wolfe*, 165 Idaho 338, 341–42, 445 P.3d 147, 150–51 (2019) (citation omitted).

We are not persuaded by the State's argument. The record reveals the district court allowed the prosecutor to respond to Fox's first objection to the entirety of State's exhibit 7 and the prosecutor only asserted the excited utterance theory. Fox then objected to a portion of exhibit 7 containing Branscome's statements and the district court immediately overruled the objections without permitting the prosecutor to respond. Contrary to the State's argument on appeal that the prosecutor was never provided an opportunity to respond to the second objection, the prosecutor's first response covered the entirety of exhibit 7 and therefore covered the second objection as well. We decline to address the State's present sense impression argument on appeal because it failed to raise the exception below.

3. The erroneous admission of exhibit 7 constituted harmless error.

Although the district court erred by admitting State's exhibit 7, we hold that the district court's admission of State's exhibit 7 was a harmless error. The State presented substantial testimony regarding the battery and robberies through Mood, Mulvaney, Branscome and the responding officers. The 911 call contained information that was duplicative of this evidence. As

22

previously mentioned, the record as a whole contained significant evidence establishing Fox battered and robbed Mood and Mulvaney. We therefore conclude that the probative force of the erroneously admitted 911 call was minimal when weighed against the probative force of the record as a whole. Therefore, we hold that the district court's error was harmless.

**E. The prosecutor committed misconduct during the closing argument, however, the error was harmless.**

Fox argues that the prosecutor committed misconduct during closing argument because he "declared that Fox admitted robbing Mood during police interrogation." Specifically, Fox challenges this portion of the prosecutor's closing argument:

> He doesn't say it's an accident to Officer Mortensen, but if you listen to that recording, that's the only conclusion you can draw. That it's not something else, but it just happened as he was pulling his gun and turning around. But then, if you listen to it with Detective Hollenbeck, about two weeks later, he is very specific, saying, "I jabbed that into his cheek and dropped him." You've got two different accounts of what Mr. Fox said he did to Mr. Mood; both conflict with each other. And at first, it's an accident. And second, it's an intentional, I'm hitting him. I'm jabbing it [sic] in the face with that gun *and then robbing him.*

(Emphasis added). Fox claims this was a gross misrepresentation of the evidence because Fox did not make any admission to robbing Mood. Additionally, Fox argues that the prosecutorial misconduct was not harmless and requires his conviction to be vacated because the district court's decision to overrule the objection supported the prosecutor's statement. Finally, Fox asserts that if the error is harmless, this Court should nonetheless remand the case to discourage what Fox alleges is "a pattern of repetitious misconduct."

The State asserts that the prosecutor did not misrepresent the evidence in his closing argument because the prosecutor was speaking to the discrepancy in the different stories Fox had given police regarding the battery. The State explains that the statement, "and then robbing him" indicated a sequence of events, not the assertion that Fox confessed to robbing Mood. The State argues if there was a misrepresentation, the error was harmless because the jury received an instruction that the closing arguments of counsel are not evidence. Finally, the State asserts that the harmless error rule requires this Court to affirm Fox's judgment of conviction if it concludes the misconduct did not affect the verdict.

During closing arguments, Fox objected to the prosecutor's statement, "and then robbing him," because the facts in evidence did not indicate that Fox admitted to robbing Mood. The district court overruled the objection.

When there is a contemporaneous objection to the trial court, this Court determines first whether there was prosecutorial misconduct, then whether the error was harmless. *State v. Perry*, 150 Idaho 209, 219, 245 P.3d 961, 971 (2010). Here, Fox asserts the prosecutorial misconduct was a result of the prosecutor's misrepresentations of the evidence. "It is plainly improper for a party to present closing argument that misrepresents or mischaracterizes the evidence. Further, it constitutes misconduct for a prosecutor to place before the jury facts not in evidence." *State v. Herrera*, 164 Idaho 261, 277, 429 P.3d 149, 165 (2018) (citations and quotations omitted). "However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless." *Field*, 144 Idaho at 571, 165 P.3d at 285 (2007).

Here, neither Fox nor Detective Hollenback spoke about the robbery in the police interview recordings the prosecutor referenced during his closing argument. Further, there were no facts admitted during the trial to establish that Fox admitted to robbing Mood. The prosecutor's use of "I" statements while paraphrasing the audio recording of the conversation between Fox and Detective Hollenbeck suggested the prosecutor was quoting Fox or describing what Fox said. Therefore, the prosecutor's statements were misleading and could cause a reasonable juror to believe Fox made the statements. We conclude that the prosecutor's statements during his closing argument constituted misconduct because they either mischaracterized the evidence or placed before the jury facts that were not in evidence. The district court therefore erred when it overruled Fox's objection to the statements.

This error, however, was harmless. The jury was instructed that statements during closing arguments are not evidence. This Court presumes the jury followed the instruction. *See State v. Miller*, 165 Idaho 115, 125, 443 P.3d 129, 139 (2019) (holding that the prosecutor's error, by mischaracterizing evidence in closing arguments, did not rise to fundamental error because the jury was instructed that closing arguments do not constitute evidence and this Court presumes the jury followed the instruction). As stated previously, the State presented substantial evidence against Fox. The probative force of the prosecutor's misrepresentation was slight when weighed against the probative force of the record as a whole. Therefore, we hold the district court's error in overruling Fox's objection was harmless.

Finally, as for Fox's argument that the case be remanded to discourage the prosecutor's office from further prosecutorial misconduct, this Court is not at liberty to ignore a harmless

24

error determination to "send a message" to the State. Nor will we address Fox's contention that the prosecutor's office has engaged in repeated misconduct. *See* I.C.R. 52 ("Any error, defect, irregularity or variance that does not affect substantial rights must be disregarded."). We decline Fox's invitation to ignore Rule 52 and discard the jury's verdicts in this matter.

## F. The cumulative error doctrine does not demand a retrial in this matter.

Fox argues that the cumulative error doctrine applies if the Court concludes there were multiple harmless errors. The State maintains that Fox has failed to show the cumulative error doctrine requires a new trial, because even if Fox proves more than two errors, any combination of the errors would not require a new trial.

"Under the cumulative errors doctrine, an accumulation of irregularities, each of which might be harmless in itself, may in the aggregate reveal the absence of a fair trial in contravention of the defendant's right to due process." *State v. Samuel*, 165 Idaho 746, 778, 452 P.3d 768, 800 (2019) (quoting *State v. Martinez*, 125 Idaho 445, 453, 872 P.2d 708, 716 (1994)). "The presence of errors, however, does not by itself require the reversal of a conviction, since under due process a defendant is entitled to a fair trial, not an error-free trial." *State v. Capone*, 164 Idaho 118, 127, 426 P.3d 469, 478 (2018) (citation omitted). Application of the cumulative errors doctrine requires a finding of more than one error. *Samuel*, 165 Idaho at 778, 452 P.3d at 800. Errors are viewed "in relation to the totality of the evidence presented at trial." *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998).

While it is troublesome that there were multiple errors committed during Fox's trial, the cumulative error doctrine does not demand a reversal in this case. Fox has not demonstrated his due process right to a fair trial has been violated. The State presented substantial evidence at trial to establish Fox's guilt. Mulvaney, Mood, and the responding officers testified to the robbery and battery. Additionally, law enforcement testified to the physical evidence of stolen items and drug contraband found in Fox's vehicle, and lab results confirmed that the substances found in Fox's vehicle were methamphetamine or marijuana. Finally, Fox's ex-fiancé testified that Fox owned the briefcase in which the drugs were found. In sum, even in the aggregate, the errors described above do not rise to the magnitude of a denial of Fox's right to a fair trial.

## G. The district court did not abuse its sentencing discretion.

Fox argues that the district court abused its sentencing discretion because his unified sentences—twenty years, with ten years fixed for the robbery and aggravated battery

convictions; seven years fixed, for his possession of methamphetamine conviction; and fourteen years, with ten years fixed, for his grand theft and possession of counterfeit notes convictions—are excessive. Fox asserts that "the district court did not give proper consideration to his family support, substance abuse and desire for treatment, health concerns, and remorse." The State maintains that the district court did not abuse its sentencing discretion because the sentences were all within statutory limits and reasonable. Additionally, the State explains the district court gave proper consideration to the factors argued by Fox, but none of these factors required a lesser sentence than the sentence imposed.

This Court reviews sentencing decisions under the abuse of discretion standard. *State v. Barr*, 166 Idaho 783, 785, 463 P.3d 1286, 1288 (2020). When "a sentence is within statutory limits, an appellant has the burden of showing a clear abuse of discretion by the court imposing the sentence." *State v. McIntosh*, 160 Idaho 1, 8, 368 P.3d 621, 628 (2016) (citation omitted). This Court considers all of the facts and circumstances of the case when determining whether a trial court abused its sentencing discretion. *Id.* The greatest consideration is reasonableness and whether the sentence is necessary to accomplish the "primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution." *Id.*

Here, Fox concedes the sentences were within the statutory limits. As such, Fox has the burden to prove that in light of the governing criteria, his sentences were excessive, considering any view of the facts. *Id.* The governing criteria are: "(1) protection of society; (2) deterrence of the individual and the public generally; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrongdoing." *Id.* (citation omitted).

The district court considered Fox's sentences in each of the four cases against him at a single hearing. In reaching its sentencing decision, the district court analyzed each of the four sentencing goals listed above but did not particularize its analysis to each of the charges against Fox. The district court discussed Fox's mitigating factors, including familial support, his difficult childhood, and genuine remorse for his actions, including an apology Fox made at the hearing. It also noted that Fox's prior criminal record was not significant. However, the district court recognized the seriousness of Fox's offenses and determined that a "fairly stiff sentence" was appropriate to serve the goals of deterrence and societal protection. Further, it emphasized that Fox "chose to use drugs, gave into [his] addiction, let drugs rule [his] life and . . . [went] down a path of stealing and robbing and using guns and hanging around with bad people."

26

The district court did not abuse its discretion when it sentenced Fox. First, the transcript demonstrates that the district court appropriately perceived sentencing as a matter of discretion as it considered the various sentencing options. Next, the district court acted within the boundaries of its discretion, recognizing statutory limitations on sentences and imposing sentences within those boundaries. Further, the district court acted consistently with applicable legal standards, discussing the four goals of sentencing and how various factors influenced its resulting sentences. Finally, the district court reached its decision through the exercise of reason by weighing various factors and reaching a sentence which it believed would serve the four sentencing goals. Fox has failed to demonstrate that the district court abused its sentencing discretion.

## H. The district court did not abuse its discretion when it denied Fox's Rule 35 motion for a reduction of sentence.

The district court denied Fox's motions for reduction of sentence, which he filed a little over a month after his sentencing. Fox argues that the district court abused its discretion in denying his Rule 35 motions because the district court failed to consider new information and mitigating factors in his case. The new information included: another apology for his criminal behavior, enrollment in a recovery program and Narcotics Anonymous, obtaining his GED, working at the chapel, obtaining Microsoft certification, and the absence of any disciplinary offense reports. The State argues that Fox has failed to show that the district court abused its discretion because the repeat apology is not new information and good behavior in prison is not mitigating information, but instead the expectation for any incarcerated individual.

This Court reviews a district court denial of a defendant's motion for reduction of sentence under the abuse of discretion. *State v. Adair*, 145 Idaho 514, 516, 181 P.3d 440, 442 (2008). "If the original sentence is not excessive, then the defendant must show at the trial court level that additional facts or information make the sentence excessive in light of that additional information." *Id.* However, the appeal of a denial of a motion to reduce the defendant's sentence cannot be used "as a vehicle to review the underlying sentence absent the presentation of new information." *Id.* at 517, 181 P.3d at 443.

Fox's initial sentences were not excessive. Accordingly, Fox must present new evidence or information that make the sentences excessive. While Fox's good behavior during his incarceration is laudable, it did not establish that the original sentences were excessive. Good behavior by a defendant while in custody is to be expected. Additionally, the district court

27

expressly acknowledged Fox's remorse as a mitigating factor when it sentenced Fox. Therefore, Fox's second apology for his criminal behavior did not constitute new information. Overall, the district court acted within its discretion and consistent with legal standards when it denied Fox's motion for a reduction in sentence. As such, the district court did not err in denying Fox's Rule 35 motions.

## IV. CONCLUSION

For the foregoing reasons, we affirm Fox's judgments of conviction and sentences.

Justices BRODY and STEGNER CONCUR.

BEVAN, Chief Justice, specially concurring:

While I concur with the majority's decision to affirm the district court, I respectfully dissent from the reasoning and conclusion reached by the majority in section III.B that evidence of drugs recovered from Fox's residence was not relevant to prove knowledge of the controlled substances and drug paraphernalia in his car.

As the majority aptly recognizes, whether to admit evidence presents a discretionary decision for the district court. "The trial court has broad discretion in the admission and exclusion of evidence and its decision to admit evidence will be reversed only when there has been a clear abuse of that discretion." *State v. Diaz*, 170 Idaho 79, ___, 507 P.3d 1109, 1113 (2022) (quoting *State v. Lopez-Orozco*, 159 Idaho 375, 377, 360 P.3d 1056, 1058 (2015)). To that end, I note that Fox failed to argue the district court violated the abuse of discretion standard. While the majority correctly points out that Fox asserted the district court abused its discretion when it admitted the 404(b) evidence because it did not act consistently with the applicable legal standards and did not exercise reason in reaching its decision, Fox's argument did not address these elements. In fact, after reciting the standard at the beginning of his argument, Fox never mentioned the word "discretion" again or claimed the district court abused its discretion when explaining why this Court should reverse the district court's decision to admit the 404(b) evidence.

While this Court does not impose a "formalistic requirement that the standard of review be recited and the party claiming error attack a particular prong of that standard of review," Fox failed to argue how the district court abused its discretion. *See State v. Jeske*, 164 Idaho 862, 870, 436 P.3d 683, 691 (2019) (explaining a failure to recite the standard of review is not fatal but the parties must argue the district court violated the abuse of discretion standard); *State v. Kralovec*,

161 Idaho 569, 575 n.2, 388 P.3d 583, 589 n.2 (2017) ("We note that this Court has seen an increasing number of cases where a party completely fails to address the factors we consider when evaluating a claimed abuse of discretion."). And the majority has followed Fox's lead by substituting its judgment for the district court's discretion. The only question before this Court is whether the district court abused its discretion, "not whether this Court would have made the same decision." *Nelson v. Nelson*, 144 Idaho 710, 717, 170 P.3d 375, 382 (2007) ("[t]his Court will not attempt to substitute its judgment and discretion for that of the trial court, except in cases where the record reflects a clear abuse of discretion.") (internal quotations omitted).

The rule is that evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b)(1). Even so, evidence of other crimes, wrongs, or acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, *knowledge*, identity, absence of mistake, or lack of accident." I.R.E. 404(b)(2) (emphasis added).

When considering the admissibility of evidence under Rule 404(b), the trial court must engage in a two-tiered analysis under *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009) (citations omitted). Within the first tier are two-steps. *Id*. First, the trial court must determine whether there is sufficient evidence to establish the other crime or wrong as fact." *Id.* (citation omitted). Second, the trial court must determine whether the evidence of the other act would be relevant to a "material and disputed issue concerning the crime charged, other than propensity." *Id*. (citing *State v. Field*, 144 Idaho 559, 569, 165 P.3d 273, 283 (2007)). This relevancy determination is reviewed de novo. *Field*, 144 Idaho at 569, 165 P.3d at 283. The second tier requires the district court to engage in a balancing test under Rule 403. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. This balancing test is reviewed under the abuse of discretion standard. *Id*.

The majority today holds the State failed to establish that the evidence of controlled substances and paraphernalia found at Fox's home was relevant for non-propensity purposes. Thus, even though the majority concludes that admitting the evidence amounted to harmless error, it holds the district court erred in admitting it as 404(b) evidence.

I would conclude the district court made a correct determination of the relevancy of this evidence to show Fox's knowledge. A reasonable juror could conclude it would be unlikely Fox would not know about the drugs in his car if he had knowledge (via circumstantial evidence) of

29

the same drugs at his residence. This inference means the evidence was relevant for reasons other than propensity.

Contrary to the majority's view, Fox denied knowing that the substance in his briefcase was drugs. Moreover, by pleading not guilty, Fox put "in issue every material allegation of the. . . information. . . ." I.C. § 19-1715; *see also State v. Owens*, 101 Idaho 632, 634, 619 P.2d 787, 789 (1979); *State v. Cutler*, 94 Idaho 295, 486 P.2d 1008 (1971). "[K]nowledge that one is in possession of the substance" is an essential element of the offense Fox was charged with. *State v. Fox*, 124 Idaho 924, 926, 866 P.2d 181, 183 (1993). *See also State v. Blake*, 133 Idaho 237, 240, 985 P.2d 117, 120 (1999) (quoting *Fox*, 124 Idaho at 926, 866 P.2d at 183 ("the offense requires a general intent, that is, the knowledge that one is in possession of the substance")). When Fox claimed he did not possess the drugs and disclaimed knowing they were in his briefcase, his knowledge became "a material and disputed issue concerning the crime charged." *State v. Nava*, 166 Idaho 884, 892–93, 465 P.3d 1123, 1132–33 (2020).

I agree with the Court of Appeals' explanation that "in a possession of a controlled substance case '[t]he greater the amount of controlled substance found in a defendant's possession, the greater the inference of knowledge.'" *State v. Cardoza*, 155 Idaho 889, 893, 318 P.3d 658, 662 (Ct. App. 2014) (quoting *State v. Groce*, 133 Idaho 144, 152, 983 P.2d 217, 225 (Ct. App. 1999)). That Fox was in possession of similar paraphernalia and drugs across two separate locations is relevant to show he knew the substance inside the briefcase was a controlled substance. The State has the burden to prove Fox knew the briefcase contained drugs and drug paraphernalia—establishing the drugs evidence in the shop was similar to the drug evidence in the briefcase shows Fox had knowledge.

At Fox's trial, outside the presence of the jury, the district court heard arguments from the State and counsel for Fox about 404(b). The prosecutor argued:

> It's that there was, essentially, pipes and a scale, drug paraphernalia that was found in the shop, contemporaneous, around the same time that the stuff was found in the car. There was a piece of glass tubing similar to the glass tubing in this case, that I expect Dave Sincerbeaux [the forensic scientist] to say contained methamphetamine – it contains methamphetamine that was in the shop.
>
> So, essentially, the situation here is we have methamphetamine and a methamphetamine pipe that was in the Nissan. Those both came back as positive for meth. In the shop that was searched by the police around the 19th or so, a couple of days after this, they found a methamphetamine pipe with methamphetamine inside it, as well as marijuana.

The issue, in terms of the two controlled substances charges, possession of meth and possession of marijuana, is knowledge. Can I prove that he knew it was there? I think it's very relevant to prove that knowledge if I can show in a shop two days later that he had, essentially, exclusive control of and admitted to making pipes there, that there was a pipe with methamphetamine that's similar to the pipe that was found in the car.

I think it also is relevant in terms of knowledge that the marijuana that was found in the car, you have marijuana in his bedroom that's found by the police two days afterwards. So I think the drugs that are found in the place where he was living a couple of days afterwards go directly to prove knowledge, in terms of the drugs that are found in his car on the 17th. Especially when you have denials as it pertains to the methamphetamine.

I would conclude the district court's decision to admit the State's evidence was proper because the State has the burden of proving Fox knew the drugs were in his vehicle. As the district court, in my view, correctly concluded following arguments from the State and Fox:

I find there is relevance in the fact that the residence and shop that were used or occupied by the defendant, shortly after the alleged offense occurred here that has been charged have located in them drug paraphernalia, glass tubing, scale, and baggies, which were similar to what was found in the vehicle and -- as well as marijuana that was found at that residence. So I do find that there is relevance insofar as that the, if believed by the jury, they could -- could infer that if the drugs were at his house that he would be unlikely not to have knowledge of the drugs in the vehicle if he was there. So it is relevant for the purposes of proving knowledge of the possession of the drugs that, in fact, it may have been drugs.

On appeal, Fox argues that marijuana and methamphetamine are common types of drugs and the similarities between the drugs found at Fox's residence and those found inside his car cannot prove knowledge. While the drugs may be "fairly common," the State's purported purpose in offering them at trial was not to show that because Fox allegedly possessed drugs at his residence, he therefore possessed them in his car. Indeed, that is the very propensity inference the State is prohibited from making. Even if the drugs found in both places are common, the fact that Fox had the same two types of drugs in his residence, *along with* the same drug paraphernalia, packaging, and same money bag with a dollar symbol on it makes it more likely Fox *knew* the items in both locations were the same. That distinction, while subtle, is an admissible inference we permit jurors to draw—that he had drugs in one place and thus was more likely to have them in another is the propensity inference we restrict.

Fox also argues the State failed to show no one else had access to the residence and that he alone was in exclusive control. But these questions go not to admissibility, but to weight of the evidence. The district recognized this and made clear when it admitted the 404(b) evidence that Fox was free to raise these issues at trial and challenge the State's witnesses on Fox's lack of knowledge and exclusive control. Fox chose not to do so.

Finally, I note that the district court properly exercised its discretion in my opinion by issuing a limiting instruction when the evidence was admitted. Indeed, the district court gave two such instructions. Instruction 26 noted:

> Evidence has been introduced for the purpose of showing that the defendant committed wrongs or acts other than that for which the defendant is on trial.
>
> Such evidence, if believed, is not to be considered by you to prove the defendant's character or that the defendant has a disposition to commit crimes.
>
> Such evidence may be considered by you only for the limited purpose of proving the defendant's motive, intent, plan, knowledge, or absence of mistake or accident.

And Instruction 27 explained:

> Certain evidence was admitted for a limited purpose.
>
> At the time this evidence was admitted you were admonished that it could not be considered by you for any purpose other than the limited purpose for which it was admitted.
>
> Do not consider such evidence for any purpose except the limited purpose for which it was admitted.

The district court provided these instructions to explain the evidence should be considered only for the limited purposes for which it was admitted. I cannot conclude the district court abused its discretion when it properly evaluated the evidence and instructed the jury to do the same. For these reasons, I would affirm the district court's decision to admit the 404(b) evidence.

Justice MOELLER CONCURS.

32